**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HWA SUNG SIM,<br><br>  Plaintiff,<br><br>v.<br><br>MONICA DURAN, et al.,<br><br>  Defendants. | Case No.: 1:16-cv-01051-SAB (PC)<br><br>ORDER DIRECTING OFFICE OF THE CLERK TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>[ECF Nos. 9, 10, 11, 12] |

Plaintiff Hwa Sung Sim is appearing in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff consented to United States Magistrate Judge jurisdiction on August 15, 2016. (ECF No. 5.) To date, Defendants have not consented or declined to United States Magistrate Judge jurisdiction.

On March 20, 2017, the Court screened Plaintiff's first amended complaint and found that it stated a cognizable claim against Defendant Duran for excessive force and against Dr. Johal for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (ECF No. 12.) However, the Court found that Plaintiff failed to state any other cognizable claim against any other Defendants. (Id.) Plaintiff was directed to either file a second amended complaint or notify the Court of his intent to proceed only on the claims found to be cognizable. (Id.)

1

On April 6, 2017, Plaintiff notified the Court of his intent to proceed only on the claims found to be cognizable. (ECF No. 11.) Therefore, on April 7, 2017, the Court found that service was appropriate as Plaintiff's claims against Defendant Duran for excessive force and against Dr. Johal for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (ECF No. 12.) The Court dismissed all other claims and Defendants for failure to state a cognizable claim for relief. (Id.) The Court indicated that jurisdiction existed under 28 U.S.C. § 636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction and no other parties had yet appeared. (Id.)

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, __ F.3d __, Case No. 15-15259, 2017 WL 5180205, *3 (9th Cir. Nov. 9, 2017). Accordingly, the Court did not have jurisdiction to dismiss the claims and Defendants in its April 7, 2017 order.

Based upon the foregoing, the undersigned will now recommend to the District Judge that this case continue to proceed only on Plaintiff's cognizable claims, and that the claims and Defendants described below be dismissed, for the reasons explained herein.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally

participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.
## COMPLAINT ALLEGATIONS

Plaintiff names M. Duran, Masi, S. Hanzel, B. Chambers, J. Silva, Garza, Venegas, Figueroa, Dela Cruz, Dr. Johal, Bridges, Aceves, Frudden, Towle, and John Does 1-10.

California State Prison-Wasco consists of several separate yards. Among the prison yards, yard A is infested with both drugs as well as other contraband. As a result of this infestation, fist fights are a very common occurrence on yard A.

There are three categories of fist fights: (1) one-on-one fist fight is considered to be personal or for personal reasons and classified as "mutual combat"; (2) two-on-one fist fight is considered to be disciplinary action (inmate sanctioned and punishment imposed by inmates) this act is known by inmates as a "DP" ("Discipline") classified by staff on paper as battery on an inmate (off the record as a "DP"); and (3) three-or-more-on-one this is an inmate removal from off the yard by inmates of the inmate assaulted. This is classified as an assault and battery on an inmate and only sometimes results in a referral to the district attorney for prosecution.

It is this unwritten inmate policy that prevents both racial riots and riots amongst the inmates in general. Correctional staff is aware of this unwritten policy or inmate practice and acquiesce in, consent to, or give permission to the inmates to enforce this practice. For example, if there is a one-

on-one or two-on-one fist fight all parties involved are placed in a holding cage in the program office and given a time period to cool off then they are provided with what staff call a marriage chrono to sign that states the issue is resolved and there will be no more fighting. The inmates are then released to go back to their units and placed on confine to quarters ("CTQ") for a few days until they receive a rule violation hearing.

When any of the fights occur, a Code 1 is activated in the facility and an alarm goes off with a red-light that is affixed to the building flashing an order by correctional officers for all inmates to get down or lay down on the ground. Typically, only the participants involved in the fight will remain standing and all other inmates will be on the ground. This allows officers to identify the individuals that are involved in the altercation and to prevent any other inmates from being injured by an use of force by officers.

On August 31, 2014, at 1004 hours, a Code 1 was activated in facility A dining hall B-side due to five inmates committing a battery on one other inmate. The five inmates were striking the one inmate in the head and upper body with their fists. The inmate being struck had his hands over his face and was not fighting back. Officers activated the alarm and announced a Code 1 via the institutional radio as they ordered all inmates to get down. All inmates got down except for the inmates who continued to batter the lone inmate.

Defendant Hanzel deployed his state issued MK9-OC-pepper spray striking the five inmates in their faces; however, the inmates continued to strike the lone inmate with their fists.

Plaintiff was not near the fighting nor was he in the line of fire, rather, he was approximately 20 feet or more in another direction away from all the fighting down on the ground as ordered by Defendants. Nonetheless, Defendants used deadly force against Plaintiff by discharging their weapon in Plaintiff's direction who was away from the fighting down on the ground as ordered by Defendants. The projectile struck Plaintiff in his head rendering him unconscious, causing a wound on his head area which required six staples. Additionally, Plaintiff suffered a concussion, bleeding of the brain and still suffers from the injury due to nightmares of the incident and urinates on himself. Plaintiff also continues to suffer headaches and severe migraines

1    Defendant Duran aimed her weapon at Plaintiff who was not involved in the fighting and was down on the ground as ordered and approximately 20 feet away from the fighting.

Defendants Masi, Hanzel, Chambers, Silva, Stegall, Arellano, Ayala, Garza, Venegas, and Figueroa aided and abetted with Defendant Duran in attempting to cover-up the fact that she used deadly force on Plaintiff and shot him in the head knowing that he was not involved in the incident. The Defendants reports omitted the fact that Defendant Duran shot Plaintiff in the head with her weapon even though he was not involved in the incident.

Defendant Stegall's report states that on Sunday, August 31, 2014, at approximately 1004 hours, he was covering the morning meal outside the B-side dining hall. Stegall stopped inside the dining hall to see if all the inmates had been seated when he saw inmates Martinez and Quintana stand up and yell at each other. Defendant Hanzel instructed the inmates to sit down. However, inmate Martinez stepped around the table and grabbed inmate Quintana around the neck, placing Quintana in a headlock with his right arm and began dragging Quintana away from Defendant Hanzel.

Inmate Martinez began striking inmate Quintana in the face with his left hand. Defendants Stegall and Hanzel ordered the inmates to get down. Defendants Masi called a Code 1 using his hand held radio. Inmates Jiminez, Ruiz, Caballero and Marquez, got up from their seats and began striking inmate Quintana in the face and head area. Defendant Hanzel using his MK-9-OC-pepper spray from approximately seven feet away, sprayed each of the inmates in the facial and head area. Defendant Stegall went around Hanzel to provide better coverage when he heard a shot from a 40 millimeter firearm.

Defendant Garza asked Stegall who was not involved in the incident and ten inmates were identified as not being involved. In his narrative report of the incident, Defendant Stegall stated that he and Garza noticed Plaintiff laying prone on the floor on the south wall by the B-2 dining door, covered in blood. Plaintiff informed Defendants sometime later that he was shot.

Plaintiff witnessed Defendant Duran aim her weapon at him and discharge the firearm. Instead of immediately providing Plaintiff medical treatment, Defendants began to interview Plaintiff with a video camera in an attempt to cover-up the unlawful use of force.

1    Defendant Arellano stated that on August 31, 2011, at approximately 1004 hours, he was
2    assigned as coverage in "A" dining hall on the B-side. Due to the velocity of the round, he did not see
3    where the round struck. He omitted from his report the fact that he witnessed Defendant Duran shot
4    Plaintiff in the head even though he was not near the incident.

5    In her report, Defendant Duran stated that on August 31, 2014, at approximately 1004 hours,
6    when the inmates began to fight and she ordered them to get down with negative results, she
7    transitioned from the Ruger Mini-14 and utilized the 40 millimeter and fired one round. Duran falsely
8    alleges that she aimed the weapon at one of the five inmates attacking the lone inmate upper right
9    thigh. Duran also falsely alleged that she did not see where her weapons round struck when she
10   discharged the firearm. Duran omitted from her report that Plaintiff was approximately 20 feet away
11   from the fighting down on the ground and suffered a head injury as a direct result of her discharging
12   the weapon. Duran did not mention that anyone was injured as a result of her discharging her firearm.

13   Duran showed her consciousness of guilt by claiming in her incident report that she did not
14   know where her projectile struck when in fact she is skilled and trained to hit two out of three targets
15   aimed at in order to qualify for use of that firearm.

16   Defendants Ayala, Chambers and Venegas wrote their incident reports falsely claiming that
17   they did not arrive until after everything was over and under control so they would not have to
18   document that they witnessed Defendant Duran aim and shoot Plaintiff in the head.

19   Defendant Hanzel, like Defendant Stegall, wrote in his incident report that while he was
20   attempting to gain control of the inmates fighting he only heard the weapon fired but he did not see
21   where it hit.

22   Defendants Frudden and Towle at the direction and instruction of sergeant Aceves filed the
23   Department of Corrections and Rehabilitations incident reports falsely alleging that the projective had
24   possible struck Plaintiff in the head after it had ricocheted in an attempt to cover-up the deadly force.

25   Defendants sergeant Garza and lieutenant Figueroa made sure that each of the Defendants
26   wrote their incident reports where it would not directly show that Defendant Duran had intentionally
27   shot Plaintiff in the head.
28

After the shooting, Plaintiff was taken to the medical facility and was released within hours. Plaintiff was not provided a CT scan or a mandatory 24 hour evaluation even though he was rendered unconscious by the projectile.

The next morning, Plaintiff woke up with a large amount of blood and vomit on his bed. Plaintiff was admitted to the hospital for a CT-scan and MRI on September 1, 2014. After release from the hospital, Plaintiff received no medical treatment from medical staff for approximately ten days. During the ten days, Plaintiff submitted several medical forms requesting evaluation by a doctor. When Plaintiff finally went to the medical department he complained of dizziness, nausea and vomiting; however, the Dr. Johal told Plaintiff he was lying and making a big thing out of nothing. The doctor did not send Plaintiff to a specialist for his injuries.

On October 5, 2014, Plaintiff had a seizure in the dayroom of his building, and he was admitted to the hospital. Prior to being shot in the head, Plaintiff did not have seizures and he has no prior history of seizures. In March 2015, Plaintiff blacked out in the central kitchen where he worked.

## III.

## DISCUSSION

### A. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-38 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312, 321 (1986). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 559 U.S. at 37-38. The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force. Hudson, 503 U.S. at 9-10.

Based on Plaintiff's allegations in the amended complaint, Plaintiff states a cognizable claim for excessive force against Defendant Duran. However, Plaintiff does not state a cognizable claim against any other Defendants.

### B. False Reports

Plaintiff contends that Defendants Masi, Hanzel, Chambers, Silva, Stegall, Arellano, Ayala, Garza, Venegas, Figueroa, Frudden and Towle covered-up the use of excessive force by Defendant Duran by producing false reports of the incident. A "complaint alleging that an officer filed a false report, by itself, fails to state a claim upon which relief can be granted." Koch v. Austin, No. 1:03-CV-5021-AWI-DLB, 2006 WL 403818, at *5 (E.D. Cal. Feb. 16, 2006), adopted by 2006 WL 842585 (Mar. 28, 2006). Furthermore, preparing a false report about an incident after it occurred cannot subject that individual to liability for the force used during the incident. See Villegas v. Schulteis, No. 1:09-cv-00493-YNP, 2009 WL 3157519, at *6 (E.D. Cal. Sept. 29, 2009). Accordingly, Plaintiff fails to state a cognizable claim against Defendants Masi, Hanzel, Chambers, Silva, Stegall, Arellano, Ayala, Garza, Venegas, Figueroa, Frudden and Towle.

### C. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that

8

"the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Based on Plaintiff's allegations in the amended complaint, Plaintiff states a cognizable claim against Defendant Dr. Johal.

### D. Doe Defendants 1 through 10

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

In the first amended complaint, Plaintiff names Does 1 to 10 as Defendants, but fails to link those individuals to any affirmative act or omission giving rise to the alleged constitutional violation. Accordingly, Plaintiff fails to state a cognizable claim against Does 1 through 10.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's claims against Defendant Duran for excessive force and against Dr. Johal for deliberate indifference to a serious medical need in violation of the Eighth Amendment;

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief; and

3. The Office of the Clerk is directed to randomly assign a District Judge to this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __November 30, 2017__

UNITED STATES MAGISTRATE JUDGE