1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   JON S. ALLIN, State Bar No. 155069
    Supervising Deputy Attorney General
3   DAVID C. GOODWIN, State Bar No. 283322
    Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone:  (916) 210-7342
6     Fax:  (916) 324-5205
      E-mail:  David.Goodwin@doj.ca.gov
7   *Attorneys for Defendant Duran*

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10                         FRESNO DIVISION

11

12

13   **HWA SUNG SIM,**                    1:16-cv-01051 SAB (PC)

14                          Plaintiff,    **DECLARATION OF DAVID C.**
                                          **GOODWIN IN SUPPORT OF**
15         v.                             **DEFENDANT'S MOTIONS IN LIMINE**

16   **MONICA DURAN, et al.,**

17                          Defendants.

18

19         I, David C. Goodwin, declare:

20         1.    I am employed by the California Department of Justice as a Deputy Attorney General.

21   I am licensed to practice before all of the courts of the State of California, and am admitted to

22   practice in the United States District Court for the Eastern District of California.

23         2.    I represent Defendant Duran in this action.

24         3.    Attached as Exhibit A is a true copy of Plaintiff's disclosure of expert witnesses

25   received by my office.  This disclosure included the reports of Bijan Zardouz, M.D., and Roger

26   Clark, which are attached as stated below for ease of reference.

27         4.    Attached as Exhibit B is a true copy of the expert report by Bijan Zardouz, M.D.

28         5.    Attached as Exhibit C is a true copy of the expert report by Roger Clark.

                                          1

6.      Attached as Exhibit D is a true copy of correspondence I sent to opposing counsel regarding Duran's non-expert motions in limine dated August 13, 2019.

7.      Attached as Exhibit E is a true copy of the response I received from opposing counsel regarding Duran's non-expert motions in limine dated August 16, 2019.

8.      Attached as Exhibit F is a true copy of correspondence I sent to opposing counsel regarding expert motions in limine dated August 26, 2019.

9.      Attached as Exhibit G is a true copy of the response I received from opposing counsel regarding expert motions in limine dated August 26, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2019, at Sacramento, California.

*/s/ **David C. Goodwin***
David C. Goodwin
Deputy Attorney General

SA2017304856
14049941.docx

2

# EXHIBIT A

Kevin S. Conlogue (SBN 285277)
(LACivilRightsLawyer@gmail.com)
THE LAW OFFICE OF KEVIN S. CONLOGUE
292 S. La Cienega Blvd., Ste. 207
Beverly Hills, CA 90211
Telephone: (213) 255-8837
Facsimile: (213) 477-2069

GABRIEL H. AVINA, ESQ./Cal. SBN 216099
(gabriel@avinalaw.com)
LAW OFFICES OF GABRIEL H. AVINA
3781 Cimarron Street
Los Angeles, California 90018
Telephone: (323) 299-1664
Facsimile: (323) 315-5227

Attorneys for Plaintiff
HWA SUNG SIM

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| HWA SUNG SIM, | Case No.: 1:16-CV-01051-SAB(PC) |
|---|---|
| Plaintiff, | PLAINTIFF'S DISCLOSURE OF EXPERT WITNESS INFORMATION |
| v. | |
| MONICA DURAN, DR. JOHAL, | |
| Defendants. | |

**TO THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Pursuant to FRCP 26, Plaintiff HWA SUNG SIM ("Plaintiff") hereby

discloses the following retained expert witnesses whose expert opinion Plaintiff

expects to offer in evidence at the trial in this matter, along with their reports:

1. Bijan Zardouz, M.D., 1220 Hemlock Way, Ste. 108, Santa Ana, CA 92707. Dr. Zardouz is a neurologist and is Plaintiff's medical expert. He charges $1,500.00 for the first two hours of his deposition and $750.00 per hour thereafter, and $4,500.00 per day trial testimony. His reports, C.V., list of prior trial and deposition testimonies, and rate sheet are attached as Exhibit 1.

2. Roger Clark, Police Procedures Consultant, Inc., 10207 Molino Road, Sante, CA 92071. Mr. Clark is an expert on proper conduct of correctional officers and is Plaintiff's liability expert. He charges $350 per hour for deposition (2 hour minimum) and trial testimony (4 hour minimum). His report, C.V., list of prior trial and deposition testimonies, and rate sheet are attached as Exhibit 2.

3. Any and all experts noticed by any other party to this lawsuit.

4. Any expert witness that may be needed to rebut or impeach the testimony of any expert designated by the remaining parties to this action.

Plaintiff additionally discloses the following non-retained treating physicians of Plaintiff whose expert opinion Plaintiff expects to offer in evidence at the trial in this matter.

1. Amandeep Kaur Johal, M.D., C.D.C.R., California City Correctional Facility, 22844 Virginia Blvd., California City, CA 93505

2. Vijay R. Patel, M.D., C.D.C.R., Avenal State Prison, 1 Kings Way, Avenal, CA 93204

3. D. Goller, M.D., C.D.C.R., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

4. Chander P. Malhotra, M.D., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

5. Bernard Ramos, M.D., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

6. Andrew Zepp, M.D., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

7. B. Beltran, R.N., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

8. R. Barrena, R.N., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

9. L. Dickerson, R.N., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

10. J. DelaCruz, R.N., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

11. A.Arteaga, R.N., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

12. V. Joseph, R.N., Wasco State Prison, 701 Scofield Ave., Wasco, CA 93280

13. Jorge Gonzalez-Cruz, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

14. Jonathan R. Perry, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

15. Robert S. Port, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

16. Asela P. Jumao-As, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

17. Krishna R. Kylasa, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

18. James Alan Cusator, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

19. Joan C. Canton, N.P., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

20. Ruby T. Ramos, FNP, San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

21. Nadim W. Sarkies, M.D., San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

22. Malvin U. Pallomina, FNP, San Joaquin Community Hospital, 2615 Chester Ave., Bakersfield, CA 93301

23. Asha Atwell, D.O., Kern Medical Center, 1700 Mt. Vernon Ave., Bakersfield, CA 93306

The listed non-retained experts' facts and opinions have already been disclosed in medical records produced by the Parties or subpoenaed in this matter.

Plaintiff reserves the right to amend and/or supplement this Expert Witness Designation, and if such amendment or supplement need be necessary, any and all experts disclosed will be made available for deposition at a mutually convenient time and place.

Date: July 3, 2019            **THE LAW OFFICE OF KEVIN S. CONLOGUE**

By: ___/S/Kevin S. Conlogue_____
Kevin S. Conlogue
Attorney for Plaintiff, HWA SUNG SIM

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the action. My business address is 292 S. La Cienega Blvd., Ste. 207, Beverly Hills, CA 90211.

On July 3, 2019, I served the foregoing document described as

• PLAINTIFF'S DISCLOSURE OF EXPERT WITNESS INFORMATION

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

| |
|---|
| Xavier Becrra, Esq.<br>Jon S. Allin, Esq.<br>David C. Goodwin, Esq.<br>Deputy Attorney General<br>1300 I Street, Ste. 125<br>P.O. Box 944255<br>Sacramento, CA 94244<br>Telephone: (916) 324-5396<br>Facsimile: (916) 324-5205<br>Attorneys for Defendants Duran and Johal |

[X]    **BY MAIL.** I am "readily familiar" with the business practices at my place of business for collection and processing of correspondence for mailing with the United States Postal Service and the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

X    (State & Federal)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and    I    declare    that    I    am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 3, 2019, at Los Angeles, California.

_____/s/S. Nathan Yun_____
S. Nathan Yun

# EXHIBIT B

# BIJAN ZARDOUZ, M.D., INC.

Diplomate American Board of Neurology and Psychiatry (Neurology)
Fellow of the American Association of Electrodiagnostic Medicine
Certified in Clinical Neurophysiology

**MAILING ADDRESS**
**FOR SANTA ANA**
P.O. Box 28883
Santa Ana, CA  92799
714/540-2272
FAX 714/540-7206

**MAILING ADDRESS**
**FOR CORONA**
P.O. Box 28017
Santa Ana, CA  92799
714/540-2272
FAX 714/540-7206

**MAILING ADDRESS**
**FOR SAN DIEGO**
P.O. Box 28883
Santa Ana, CA  92799
714/540-2272
FAX 714/540-7206

**MAILING ADDRESS**
**FOR SAN BERNARDINO**
P.O. Box 28017
Santa Ana, CA  92799
909/883-2440
FAX 909/883-2998

October 26, 2018

The Law Office of Kevin S. Conlogue
1901 Avenue of the Stars
Suite 234
Los Angeles, California  90067

Attention:  Kevin S. Conlogue, Esq.

                    **RE:   SIM, HWA SUNG**
          D/INJURY:  August 31, 2014
               CASE:  1:16-cv-01051-DAD-SAB

## NEUROLOGICAL INDEPENDENT MEDICAL EVALUATION

Date of evaluation:  October 17, 2018

Date of dictation:   October 26, 2018

Dear Mr. Conlogue:

On October 17, 2018, I examined Mr. Hwa Sung Sim, a
27-year-old, right-handed male, at my neurology office in
Santa Ana, California.

Page 2
October 26, 2018
RE:  SIM, HWA SUNG

## HISTORY OF PRESENT ILLNESS

As the patient states, on August 31, 2014, at about 8:30
to 9:00 a.m., he was sitting on the ground and having
breakfast.  He does not recall what he was eating.  The
patient states a fight broke out among four or five other
prisoners who were about 15 to 20 feet away from him.
Suddenly, a female officer from the tower took a shot at
him.  The patient states it felt as if he had been hit by
a car.  At first, he was confused, and he grabbed his
head.  The patient states that when he touched the left
side of his head, his head went "inside of his scalp."
Then blood started to spread around.  The patient fell
all the way to the ground while his left hand was on his
head.

The patient recalls that about five to ten minutes later,
a nurse and the police arrived at the scene with a
gurney.  The patient was placed on the gurney, and he was
taken to the medical unit at the prison.

Then the patient was transported by ambulance to Kern
Medical Center.  The patient states he was still confused
and his memory was somewhat unclear by the time he got to
the hospital.  He states they waited to apply staples to
his head until his memory cleared up.  Then seven staples
were applied to his left parietal head region.  He was in
the hospital for two hours.

The patient was subsequently seen by Dr. Patel and Dr.
Johal, doctors at the prison.  He was also seen at San
Joaquin Community Hospital.  He underwent CT scans and
MRI scans.

The patient states he is not currently being treated by
any doctor.

The patient has been referred to me for a Neurological
Independent Medical Evaluation.

Page 3
October 26, 2018
RE:  SIM, HWA SUNG

## PRESENT COMPLAINTS

At the present time, the patient complains of headache, all over his entire head.  However, sometimes the headache is only in the area of trauma (the left parietal area), and sometimes it is in his anterior temples.  The headache happens about four times per week, and it can last two to three hours.  These headaches are not very strong.  However, the patient gets a stronger headache about once every two weeks, which is generalized.  It can last one-half day to a whole day.  On a scale of 1 to 10, he rates this headache as an 8/10.

The patient gets nausea upon waking up in the morning, which can last for a couple of hours.  When the nausea is stronger, it can last for a whole day, and he starts to vomit.  The patient has not been seen by any doctor since he was released from prison.  (I advised him to be seen by a GI doctor.)

The patient still gets panic attacks or paranoia that somebody is going to attack him or shoot him.  This happens when he is out on the street, either walking or driving.  When it happens, he turns and looks to his sides to check if something is happening.  When he gets clearance that his environment is safe, then he feels better.  This feeling of a panic attack or paranoia happens often, roughly every day.

The patient states he has had three blackout spells, all of which happened while he was in prison.  One of the spells was witnessed by other inmates.  He was told that he was on the ground, and he was twitching.  The patient has no memory of that time.  However, he does recall that he lost bladder control during this spell, but he had no bleeding from his mouth or anywhere else.

The patient states the other two blackout spells were not witnessed.  He was alone, and later on he was found on the ground by other people.

Page 4
October 26, 2018
RE:  SIM, HWA SUNG

The patient states that he had no warning of these three
blackout episodes/loss of consciousness.  He states the
episodes did happen when he had a strong headache.  He
states the headache was continuously strong for the first
two years after the injury.  He states that since he was
released from prison about two and one-half to three
years after the injury, his headaches have not been as
strong and continuous.

The patient states that about once or twice a week, he
wets his bed at home while he is sleeping.  He states
this also happened when he was in prison.

The patient states that sometimes when he talks, he
forgets to say the words or he forgets what he wanted to
say.  However, he states these attacks are now less in
frequency and intensity in comparison to the past.

The patient has also had numbness of his thumbs since the
incident in August 2014.  He states he never had numbness
prior to that.  The numbness comes and goes randomly, and
it can last five minutes to one-half hour.

## PAST MEDICAL HISTORY

The patient's past medical history is negative.  He has
had no serious medical conditions or surgeries.  He has
had no work-related accidents, motor vehicle accidents,
or personal injuries.  He also states he has had no prior
head injuries.

## PERSONAL AND FAMILY HISTORY

The patient is single.  He has no children.  His parents
are alive and well.  He has two brothers, healthy.  His
family history is negative for medical problems.  He does
not smoke cigarettes.  He drinks beer about once every
other week.

Page 5
October 26, 2018
RE:  SIM, HWA SUNG

### EMPLOYMENT HISTORY

The patient is not currently employed.  He states he worked full time in a warehouse for the past seven to eight months.  The patient states that he stopped working about two weeks ago because the company went out of business.

### MEDICATIONS

The patient takes no medications at the present time.

### ALLERGIES

There is no known allergy to any medications.

### REVIEW OF SYSTEMS

The patient complains of headaches, as discussed.  He has dizziness upon getting up in the morning, which he describes as a spinning sensation.  He states it used to last all day long, but now it lasts about 30 minutes.  The patient gets double vision and fuzzy vision together.  It can happen at any time, and it lasts for a few seconds.  The patient complains of pain in the midline chest area up to the throat.  It can last for about three minutes.  It happens with and without eating.  The patient complains of occasional difficulty breathing.  He complains of numbness in both thumbs, as discussed.  The patient has difficulty falling asleep.  He has mood problems, as discussed above.  The patient also states he is forgetful of simple things.

The patient does not complain of anosmia, ageusia, hearing problems, dysphagia, dysphasia, bowel problems, or numbness/tingling sensation in the lower extremities.

Page 6
October 26, 2018
RE:  SIM, HWA SUNG

## PHYSICAL EXAMINATION

Blood pressure is 100/60.  Heart rate is 72 per minute and regular.  Temperature is 98.6°.  Weight is 165 pounds.  Height is 5'8".

### HEENT

There is a 3 cm. scar line on the left parietal head region.

Otherwise, the head is normocephalic.  No cranial bruit is heard.  External auditory canals, nostrils, oral cavity and sclerae look normal.

### NECK

The neck is supple.  No carotid bruit is heard. Neck extensors and flexors are strong.  There is no evidence of lymphadenopathy.

### HEART

Normal S1 and S2.  No cardiac murmur is heard.

### CHEST

Lungs are clear to auscultation and percussion.

### ABDOMEN

Examination reveals no organomegaly and no distention. Bowel sounds are present.

### EXTREMITIES

The extremities are symmetrical.  Peripheral pulses are present.

### SKIN

There is no dermatological disorder noted.

Page 7
October 26, 2018
RE:  SIM, HWA SUNG

## LYMPHATICS

There is no lymphadenopathy palpated.

## NEUROLOGICAL EXAMINATION

### MINI-MENTAL STATUS

The patient was oriented to time, place and person,
except he stated the day of the month was the 16th.  (It
was the 17th).  The patient's recent and remote memory
were normal. However, he had slight difficulty recalling
three words after three minutes.  He was easily able to
recall two of the three words.  Then with hints, he was
able to recall the third word.  The patient was able to
accurately perform serial seven studies, and he was able
to correctly spell the word "WORLD" both forwards and
backwards.  His reading, writing and repetition were
normal.  He did not have left-to-right confusion.  The
patient did not have apraxia.

### CRANIAL NERVES

I: The patient can smell cinnamon.

II: Pupils are equal, round and reactive to light and accommodation.  Visual fields are full.  His visual acuity is 20/20, bilaterally, with glasses.  Funduscopic examination is normal.

III, IV, VI: Extraocular movements are full.  There is no nystagmus or diplopia.  Saccadic eye movements are normal.

V, VII: There is no sensory or motor deficit on the facial area.

VIII: Air conduction is more than bone conduction.  Weber is in the midline.

Page 8
October 26, 2018
RE:  SIM, HWA SUNG

IX, X:    The uvula is in the midline and retracts
          symmetrically.

XI:    Sternocleidomastoids  and  trapezii  are
       strong, bilaterally.

XII:    Tongue is in the midline, protrudes in
        the midline.   There is no atrophy or
        fasciculations noticed.

## MUSCLE EXAMINATION

Muscle tone, bulk and strength are within normal limits
in the upper and lower extremities.

## REFLEXES

Deep tendon reflexes are 2 in the upper extremities and
lower extremities in a symmetrical pattern.  Plantars are
downgoing, bilaterally.   There is no evidence of long
tract sign by this examination.

## SENSORY EXAMINATION

Sensation to touch, pinprick, position, vibration and
temperature is intact throughout.

## COORDINATION

Finger-to-nose, heel-to-shin,  and  rapid  alternating
movements are normal.

## GAIT

The patient can walk normally.  He can perform heel and
toe walking.  Tandem gait is normal.

Romberg is negative.

Straight leg raising is 70 degrees, bilaterally.  Deep
knee bending is normal.  Forward bending is normal.

Page 9
October 26, 2018
RE:  SIM, HWA SUNG

## EPWORTH SLEEPINESS SCALE

An Epworth Sleepiness Scale was completed in the office today.  The patient indicated that he never dozes or falls asleep during any of the daytime circumstances/ activities posed to him, including when he is sitting and reading, when he is watching television, when he is sitting inactive in a public place, when he is a passenger in a motor vehicle for an hour or more, when he is lying down in the afternoon, when he is sitting and talking to someone, when he is sitting quietly after lunch (no alcohol), and when he is stopped for a few minutes in traffic while driving.

The patient's total Epworth score is 0.  There is no evidence of any daytime drowsiness or sleepiness.

## ACTIVITIES OF DAILY LIVING

An Activities of Daily Living form was also completed in the office today.  The patient states that he lives in a two-story house with his parents and one brother, and his bedroom is upstairs.

The patient has difficulty with sleep, as discussed above.

Otherwise, the patient indicated he has no difficulties with self-care and personal hygiene, communication, physical activities, nonspecialized hand activities, sensory function, travel or sexual function.

## REVIEW OF MEDICAL RECORDS

I am in receipt of a Neurological Independent Medical Evaluation report from Steven L. McIntire, M.D., Ph.D., which is summarized as follows:

> It is noted that all pages of this report are dated September 25, 2018, although Page 1 of the report states that Mr. Sim was evaluated on June 28, 2018.

Page 10
October 26, 2018
RE:  SIM, HWA SUNG

Under Chief Complaints, it was indicated that claimant's main chief complaint was headaches. The claimant also complained of dizziness, nausea and anxiousness.

The history of injury regarding the accidental gunshot to the left side of the claimant's cranium with a rubber projectile was noted, as well as his initial complaints at that time, his treatment in the emergency room, and the subsequent events of the claimant experiencing three blackout spells.

During the first blackout spell, witnesses in the prison noticed that the claimant was twitching on the ground. The claimant returned to the hospital. He was told he had a possible seizure, and he was hospitalized for several days. The claimant was prescribed a seizure medication, in addition to pain medications.

A couple of months later, the claimant experienced another blackout spell while in prison. Witnesses stated that he was not shaking this time. The claimant again returned to the same hospital, and he was admitted for a few days. He was apparently told that he had a migraine and a blackout rather than a seizure.

The third blackout spell happened after the claimant had been released from prison. He was home alone at the time, and he woke up on the kitchen floor. The claimant did not call 911. He went to bed for the day, and he returned to his usual activities the next day. He never consulted a physician for this episode.

The claimant stated he never passed out or had a seizure before he was shot.

At the time of this evaluation, the claimant's ongoing symptoms included intermittent headaches. When he had a headache, it could bring on nausea and dizziness, which he described as a spinning

Page 11
October 26, 2018
RE:  SIM, HWA SUNG

sensation.   The claimant was taking ibuprofen for
his headache, on the average of three to four days
of the week.   The ibuprofen was usually helpful,
but it did not completely get rid of the headache.

The claimant complained of ongoing anxiety, which
started when he first returned to the prison from
the hospital the day he was shot.   The claimant
would get paranoid when he was anxious.   On the
average, the anxiety happened once or twice a week.

The claimant had not seen a physician for his
headaches and anxiety since being released from
prison.

The claimant was currently working part time, 15 to
20 hours per week, helping a friend.   The claimant
also stated he could still play sports, such as
handball and basketball.  However, he would have to
stop sooner because his head would feel heavy.   He
did nothing to extremes.

On physical examination, the patient was not in any
acute distress.   Examination of the head revealed
small   scars   over   the   anterior   superior   left
temporal region.   There was an approximate 1.5 cm.
scar adjacent to an approximate 3 cm. scar above
the left ear, with slight soft tissue irregularity.
There was no tenderness to palpation of this area.

The claimant's Mental Status Exam was completely
normal, including orientation, recent and remote
memory,   concentration,   receptive   and   expressive
language.

On neurological examination, cranial nerve exam,
motor exam, sensory exam, reflexes, cerebellar exam
and gait exam were all normal.   Romberg's was
negative.

Dr. McIntire reviewed medical records.   No detail
whatsoever was provided in any of the entries,
except for the following:

Page 12
October 26, 2018
RE:  SIM, HWA SUNG

CT scan of the brain done on September 1, 2014, revealed a mild hemorrhagic contusion in the left frontal lobe at the site of injury. There was no fracture, no epidural hematoma, and no subdural hematoma.

CT scan of the brain done on September 2, 2014, revealed residual left frontal contusion and subarachnoid hemorrhage.

CT scan of the head done on September 26, 2014, showed no acute infarct, hemorrhage or mass.

CT scan of the brain done on October 6, 2014, revealed no acute intracranial abnormality.

CT scan of the cervical spine done on October 6, 2014, was normal, except for a reversed curve.

MRI of the brain done on October 7, 2014, was normal.

EEG done on October 7, 2014, was a normal awake EEG study.

CT scan of the brain done on March 11, 2015, showed no intracranial hemorrhage, mass or midline shift.

EKG done on March 11, 2015, showed normal sinus rhythm.

CT angiogram of the head cone on March 12, 2015, showed a normal Circle of Willis.

MRI of the brain done on March 12, 2015, showed no cranial hemorrhage, mass, midline shift, infarction or suspicious enhancement.

Bilateral carotid duplex scan done on March 12, 2015, was normal.

Page 13
October 26, 2018
RE:  SIM, HWA SUNG

EEG done on March 12, 2015, was a normal awake
and drowsy EEG study.

In his discussion, Dr. McIntire stated the claimant
was apparently claiming inadequacies in the medical
care he was provided while incarcerated.  However,
Dr. McIntire stated there was no indication in the
available medical records that the emergency room
physicians acted inappropriately.  He also stated
that the standards of care were met by the prison
staff.  Dr. McIntire stated he noted multiple times
in the medical records that the claimant was
noncompliant with treatment, and the medications
could have relieved his symptoms had he complied
with taking those medications.

With regard to the three episodes of loss of
consciousness since the injury, Dr. McIntire stated
that these spells described by the claimant were
most consistent with syncope (fainting).

Dr. McIntire noted that the claimant had not sought
any care for his symptoms since being released from
prison.  There were no findings on his neurological
examination, and there was no indication of ongoing
neurological impairment.  There was no disability
functional limitations as a result of the incident
on August 31, 2014, and there was no need for
additional treatment as a result of this incident.
The claimant could continue taking over-the-counter
medication for his headaches.

In summary, Dr. McIntire reiterated that the
medical treatment the claimant received for this
injury had been appropriate and consistent with the
accepted standards of care for such a head injury.

---

I am also in receipt of various other medical records,
which are summarized as follows:

Page 14
October 26, 2018
RE:  SIM, HWA SUNG

1.   On September 1, 2014, at 12:15 p.m., there is a
     handwritten note from Dr. Patel, which states,
     "On-call M.D. called that the inmate has vomited
     twice.  He is dizzy and nauseated.  He had a head
     injury yesterday."

     The patient received staples.  He did not have a CT
     scan.  He was complaining of right upper extremity
     weakness.  Evidently, he was oriented times three,
     and no visual problem was noted.  The doctor stated
     the patient was status post head injury.  At the
     time of the examination, the patient complained of
     nausea, vomiting and dizziness.

     The  doctor  recommended  that  the  patient  be
     transferred to SJCH for a CT scan of the brain.  He
     was given Zofran, 4 mg., IV, one time.

2.   There is a handwritten discharge summary from San
     Joaquin Community Hospital dated September 1, 2014.
     The  discharge  diagnoses  were  1)  Post  concussive
     symptoms,  status  post  head  injury;  and  2)  Mild
     hemorrhagic contusion of the left frontal lobe.

     At that time, the patient was given Tylenol #3, to
     take one pill every six hours.  It was stated that
     the  head  staples  could  be  removed  in  one  to  two
     weeks.  The patient was advised to have a followup
     assessment with the medical clinic.

3.   There is a followup report from the Department of
     Neurosurgery  by  Dr.  Gonzalez,  which  is  dated
     September 3, 2014.  The doctor stated, "I had the
     opportunity to review the followup CT scan of the
     brain that was done yesterday.  It looks grossly
     similar in terms of the amount of blood.  No shift
     or edema is noted."

     The doctor went on to state, "Once the patient's
     post concussive symptoms have improved/resolved, he
     may be discharged and followed up as needed."

Page 15
October 26, 2018
RE:  SIM, HWA SUNG

4.   On September 3, 2014, the patient was seen by Ruby
     Ramos, Nurse Practitioner.  This was considered to
     be a final report.  It talks about the patient's
     medications, which included IV fluids; protonics;
     Norco, 5/325 mg., one pill every six hours; Zofran,
     4 mg., IV push ever six hours for nausea and
     vomiting;  and hydralazine for elevated blood
     pressure.  The patient was also given 1 mg. of
     morphine IV push every six hours p.r.n. for severe
     pain.

     At that time, the patient's vital signs were within
     normal limits, including his temperature and heart
     rate.  His blood pressure was 103/55, and O2
     saturation was 97%.  CBC at that time showed a
     normal WBC at 7.3, hemoglobin at 12.9, and
     hematocrit at 38.2.  Serum chemistry was normal.

     Assessments included 1) Mild hemorrhagic contusion
     of the left frontal lobe secondary to head injury;
     2) Nausea and vomiting secondary to head injury/
     trauma; 3) Mild traumatic subarachnoid hemorrhage.

     The plan indicated, "Continue with the current
     management.  Anticipate discharge in the morning if
     no more vomiting."

5.   There is a discharge summary from CDCR, which is
     dated September 1, 2014.  It entitled, "Physician
     Discharge Instructions."  This summary indicates,
     "Post concussive symptoms, status post head injury;
     and mild hemorrhagic contusion of the left frontal
     lobe."

     The patient was given Tylenol #3, to take every six
     hours p.r.n. for headaches.  It was stated that the
     patient's head staples could be removed in one to
     two weeks.  The patient was to have followups with
     the infirmary doctor as needed.

Page 16
October 26, 2018
RE:  SIM, HWA SUNG

6.   There is a handwritten note from Primary Care
     Providers dated October 1, 2014.  The note
     indicates that the patient had a followup for a CT
     scan study of the brain.

     The note also indicates that the patient had an
     injury to the head the prior month.  He had a
     contusion of the left frontal head region.  The
     patient claimed that he had been experiencing
     headaches in the whole head, which were moderate in
     intensity.  He also had nausea.

     The patient's examination at that time showed a
     temperature of 98.9°, pulse of 92, blood pressure
     of 121/73, and respiration of 18.  His weight was
     5'6", and his weight was 148 pounds.  It was stated
     that the patient had a CT scan of the brain on
     September 28, 2014, and it showed no acute infarct
     or mass effect.

     Diagnosis was headache with nausea, with history of
     head injury.  The doctor felt that most likely, the
     patient's headache was a migraine-type headache.

     The doctor advised intake of ibuprofen with food
     and for the patient to return for a followup in one
     to two weeks.

7.   There is a typed report with the same date of
     service of October 1, 2014, which is signed by Dr.
     Vijay Patel.  The report indicates that the patient
     had a 40 mm. double bullet gunshot wound to the
     left side of the head.  The patient had nausea and
     vomiting.  He was sent to San Joaquin Community
     Hospital.  The patient had no visual problems or
     weakness.  The staples were intact.  There was no
     redness, swelling or discharge from the site of the
     staples.  There was no evidence of neck pain.

     It was noted that the patient underwent a CT scan
     of the brain, without contrast, on September 1,
     2014, which showed mild traumatic subarachnoid
     hemorrhage and mild hemorrhagic contusion of the

Page 17
October 26, 2018
RE:  SIM, HWA SUNG

left frontal lobe.  A repeat CT scan study done on
September 2, 2014, showed there was improvement,
with residual subarachnoid hemorrhage and contusion
at the left frontal lobe adjacent to the frontal
scalp.

The patient was given promethazine, 25 mg., twice
daily, for his nausea and vomiting.  He was to take
Tylenol for pain.  He was advised to rest for about
ten days.

8.    There is a report dated October 5, 2014, which
indicates, "Possible unwitnessed seizures.  The
patient was found on the ground, possibly post
ictal, with loss of consciousness hours prior to
admission."

The report states, "This is a case of 23-year-old
Korean, incarcerated male from Wasco State Prison,
with no medical or surgical history, except for a
right (should be left) occipital-temporal wound
from a rubber bullet on August 31, 2014."  The
report indicates that the patient was brought to
KMC, where surgical staples were applied to the
lacerated area on the right (should be left)
occipital-temporal area.  Then he was discharged.
Since the incident, the patient had been having
dizzy spells and episodes of passing out.

The day prior to admission, while the patient was
in the dayroom, he continuously had a pounding
headache and dizziness.  The patient was found to
have a loss of consciousness in the dayroom, with a
possible seizure disorder.  The patient stated that
he woke up on a gurney, and he had no recollection
of what happened.  He evidently had a post ictal
episode, with right-sided weakness and numbness in
both the right upper and lower extremities.

The patient was evaluated by the facility
physician.  IV access was placed, and the patient
was transferred to San Joaquin Community Hospital
for further assessment.

Page 18
October 26, 2018
RE:  SIM, HWA SUNG

The month prior to this visit, the patient was hospitalized due to an intraparenchymal bleed after being shot in the head with a rubber bullet. The patient underwent a CT scan of the brain, without contrast, which showed no acute intracranial abnormality. He also had a CT scan study of the cervical area, which was normal except for reversal of the normal cervical curvature. The patient's latest blood test was unremarkable for CBC and serum chemistry, as well as PT and INR.

Under Assessment, it was reported, "New onset of seizure, unwitnessed, with loss of consciousness; right-sided weakness, possibly post ictal; syncopal versus seizure disorder; history of hemorrhagic contusion in the left frontal lobe sustained from a rubber bullet wound in August 2014; and history of head injury with post traumatic headaches and dizziness, as well as vertigo."

At this time, the patient was admitted to the medical/surgical unit at CDCR, with IV fluid therapy. A neurologist was consulted to evaluate the patient. Pain medication and anti-emetics were ordered.

9.   The patient had an EEG study on October 6, 2014, which was within normal limits for wakefulness.

10.  The patient had an MRI study of the brain, without contrast, on October 7, 2014, which was reported as normal.

11.  On October 7, 2014, at 9:34 a.m., the patient was seen by a neurologist at San Joaquin Community Hospital.   The patient still complained of headaches, dizziness, and intermittent vomiting. It was noted that he had an EEG study, which was reported as normal for wakefulness. The patient also had a CT scan of the brain, which was reported as normal.

Page 19
October 26, 2018
RE:  SIM, HWA SUNG

The doctor indicated that there was a suspicion for seizure disorder.  The patient also had a history of head injury with post traumatic headache and vertigo.  The patient was started on Depakote ER, 500 mg., daily.  The doctor recommended a blood study and a followup examination.

12.   There is a handwritten note dated January 12, 2017, which states that the inmate had recurring dreams of an incident that occurred a couple of years ago. The patient stated, "I have been getting them almost every other day, and it is causing me to urinate in bed.  The incident was when I got shot with a rubber bullet on my head."  The patient was referred to the Mental Health Department.

## IMPRESSION

1.   Status post gunshot wound to the left parietal head region with a rubber bullet on August 31, 2014, without loss of consciousness.

2.   Status post laceration to the left parietal head region and status post application of staples.

3.   Evidence of a mild contusion and subarachnoid hemorrhage in the left frontal lobe, per the CT scan of the brain done on September 1, 2014 (as noted in Dr. McIntire's report).

4.   Post concussive head syndrome characterized by the presence of intermittent headaches, dizziness upon getting up in the morning, visual disturbance, sleep difficulty, mood changes and forgetfulness.

5.   Three episodes of blackout spells/loss of consciousness without any warning, with witnessed twitching during one of the attacks.

6.   Episodic anxiety attacks/paranoia.

Page 20
October 26, 2018
RE:  SIM, HWA SUNG

7.    Subjective   complaint   of   chest   pain   and
      shortness of breath, most probably secondary
      to #6.

8.    Nausea upon getting up in the morning.

9.    Occasional    urinary    incontinence    during
      sleeping hours.

10.   Subjective   complaint   of   numbness   in   both
      thumbs.

## CONCLUSION

Mr. Hwa Sung Sim, a 27-year-old, right-handed male, has
been evaluated in my office on October 17, 2018.   The
history of injury, the patient's subjective complaints,
my neurological examination, and my review of the medical
records, made the above mentioned diagnoses.

At this time, the patient's neurological examination is
stable.

The patient also did well overall on his mini-mental
status exam, except he did show some difficulty with his
recent memory when he was trying to recall three words
after three minutes.   He made mistakes at first.   When
I redirected him, the patient could recall two out of
three words.   Then with hints, he could recall the third
word.

Based on my personal interview with the patient and my
review of Dr. McIntire's report, I can state without
doubt that he suffered an accidental traumatic injury to
the left parietal head region on August 31, 2014, which
caused a concussion.   Then the patient developed a post
concussive head syndrome, as described above.   The issue
of concussion was discussed by some of the other doctors
who were seeing the patient at the time of the injury and
thereafter.

Page 21
October 26, 2018
RE:  SIM, HWA SUNG

There is an issue regarding whether or not the patient
had occasional seizures that were not picked up by two
EEG studies that he underwent.   Per Dr. McIntire's
report, the patient underwent EEG studies on October 7,
2014, and March 12, 2015, and they were both normal.  At
this time, I recommend that the patient undergo a longer
EEG recording, either as an inpatient or an outpatient,
to find out if there are any abnormal brain discharges.
If so, then the patient will need to be treated.

At this time, the patient's present complaints are
primarily anxiety and enuresis (bed wetting).   In this
regard, the patient definitely needs to be followed by
the Department of Psychiatry.   Due to his episodic
anxiety attacks/paranoia, the patient needs to be treated
with certain medications by the Department of Psychiatry.
He also needs to receive psychotherapy.   All together,
this treatment should help the patient with his enuresis
that has been bothersome to him.

If I can be of any further assistance, please let me
know.

Thank you for this interesting consultation.

Sincerely yours,

Bijan Zardouz, M.D.

BZ:pj:81-sa

# BIJAN ZARDOUZ, M.D., INC.

Diplomate American Board of Neurology and Psychiatry (Neurology)
Fellow of the American Association of Electrodiagnostic Medicine
Certified in Clinical Neurophysiology

**MAILING ADDRESS FOR SANTA ANA**
P.O. Box 28883
Santa Ana, CA 92799
714/540-2272
FAX 714/540-7206

**MAILING ADDRESS FOR CORONA**
P.O. Box 28017
Santa Ana, CA 92799
714/540-2272
FAX 714/540-7206

**MAILING ADDRESS FOR SAN DIEGO**
P.O. Box 28883
Santa Ana, CA 92799
714/540-2272
FAX 714/540-7206

**MAILING ADDRESS FOR SAN BERNARDINO**
P.O. Box 28017
Santa Ana, CA 92799
909/883-2440
FAX 909/883-2998

October 30, 2018

The Law Office of Kevin S. Conlogue
1901 Avenue of the Stars
Suite 234
Los Angeles, California  90067

Attention:  Kevin S. Conlogue, Esq.

            **RE:  SIM, HWA SUNG**
    D/INJURY:  August 31, 2014
        CASE:  1:16-cv-01051-DAD-SAB

### ADDENDUM

Dear Mr. Conlogue:

This is an addendum to my recent Neurological Independent Medical Evaluation report dated October 26, 2018.  I have reviewed the five-page Declaration signed by Hwa Sung Sim, which more specifically describes his medical condition.

Based on the information in this Declaration, it is clear that Mr. Sim had a contusion to the brain on August 31, 2014.  On that day, he was transported to Kern Medical Center, where he was evaluated, but a CT scan or an MRI scan of the brain was not performed.  (Per the patient's history to me and the above medical records, staples were applied to the wound on his head, and then he was discharged.)

*Offices:*
1220 Hemlock Way, Suite 108 • Santa Ana, CA 92707 • 714/540-2272 • FAX 714/540-7206
1681 N. Waterman • San Bernardino, CA 92406 • 909/883-2440 • FAX 909/883-2998
802 Magnolia, Suite 106 • Corona, CA 92879 • 714/540-2272 • FAX 714/540-7206
3863 Clairemont Drive • San Diego, CA 92117 • 714/540-2272 • FAX 714/540-7206

Page 2
October 30, 2018
RE:  SIM, HWA SUNG

When the patient was returned to the prison, he was not
kept in the CDC unit where injured prisoners are kept for
observation.

I should state that as a general rule, when a patient has
a head injury, it can be called a minimal traumatic brain
injury, concussion/contusion, or some other synonymous
terminology.  These patients need to be observed every
four to six hours for at least the first 24 hours after
the head injury to be certain there is no change in their
mental status.  This was not done in Mr. Sim's case.

Per the patient's Declaration, the next day, September 1,
2014, he continued to be symptomatic while in his cell,
including vomiting in his bed and blood oozing from his
scalp, as well as headaches, dizziness and nausea.
Therefore, he was transported to San Joaquin Community
Hospital.  (Per the medical records, he underwent the
first CT scan of his brain on this date, and it showed
abnormal findings.)

As the patient stated in his Declaration, he was still
symptomatic when he returned to Wasco State Prison on
September 4, 2014, but he was not examined by a doctor,
and he did not receive any medication.  He remained
symptomatic.

It was not until September 10, 2014, that the patient was
seen by a doctor in the prison.  The patient was told by
the doctor that he was "making a big deal out of nothing"
and that nothing was wrong with him (as noted on Page 3
of the Declaration).  Therefore, he was not given any
medication on this date.

The patient was seen by a doctor again on September 19,
2014.  However, he was again told that he was "making a
big deal out of nothing" (as noted on Page 3 of the
Declaration).

Page 3
October 30, 2018
RE:  SIM, HWA SUNG

On October 1, 2014, the patient was seen by Dr. Johal due
to his ongoing complaints of headaches, dizziness, nausea
and vomiting.  The patient was also told by Dr. Johal
that there was nothing wrong with him (as noted on Page
4 of the Declaration).

Needless to say, when there is a history of concussion/
contusion, patients remain symptomatic for at least one
to three months and sometimes longer.

In this particular case, I can state that Mr. Sim did not
receive medical care in a timely manner.

Finally, I should state that patients, such as Mr. Sim,
with a history of concussion/contusion have a chance of
developing neurological issues in the future, such as
mood changes and sleep problems.  There is also a small
percentage of patients who develop seizures and/or memory
issues.  In the event that patients develop any of these
symptoms, they require followup neurological assessments
and testings, and at times they require more specific
treatment depending on the type of symptoms they have
developed.

If I can be of any further assistance, please let me
know.

Sincerely yours,

Bijan Zardouz, M.D.

BZ:pj:81-sa

# BIJAN ZARDOUZ, M.D.

Curriculum Vitae

1220 Hemlock Way, Suite 108 Santa Ana, CA 92707 Tel No. (714) 540-2272 Fax (714)540-7206
1681 N. Waterman Avenue San Bernardino, CA 92404 Tel No. (909) 883-2440 Fax No. (909) 883-2998

## Neurology Residency

| | | |
|---|---|---|
| 1980-1982 | Wayne State University | |
| 1982-1983 | UCLA, Wadsworth Medical Center | |

## Fellowship

| | | |
|---|---|---|
| 1983-1984 | USCD Medical Center | : Neurophysiology Fellowship |
| 1984-1985 | USC Medical Center | : Neuromuscular Disorder Fellowship |

## Board Certification

| | |
|---|---|
| 1982 | Licentiate: State Board of California |
| 1985 | Board Certified : American Board of Psychiatry and Neurology |
| 1985 | Board Certified : American Board of Electrodiagnostic Medicine (EMG/NCV) |
| 1986 | Board Certified : American Board of Clinical Neurophysiology (EEG and Evoked Potentials) |

## Expert Witness

| | |
|---|---|
| 1985-Present | 500 Cases applicant/defense numerous trials and depositions |

## Honors and Awards

| | |
|---|---|
| 1978 | Honors at Graduation, Medical School |
| 1984 | The Golden Neuron Award – UCSD Neuroscience Department |
| 1994-1995 | Oustanding Teaching Award – UCSD Medical Center |

## Medical Society

| | |
|---|---|
| 1982-Present | American Academy of Neurology (AAN) |
| 1986-1998 | Clinical Assistant Professor of Neurology at UCSD Clinical Associate Professor of Neurology at UCSD |
| 1996-Present | Qualified Medical Evaluator (QME) |

## Medical School

| | |
|---|---|
| 1971-1978 | Tehran University |
| 1977-1978 | Intership, Pahlavi Hospital |

## Publications

200 Page Textbook of Physiology of the Nervous System in conjuction with the Professor of Physiology (1974-1975)
Medical Diploma Thesis about Neurogenoc Bladder
Anterior Compartment Syndrome Evaluation in Human Subjects at UCSD in conjuction with the Orthopedic Department (1983-1984)

# Bijan Zardouz M.D. Inc

1681 N. Waterman Ave., San Bernardino, CA 92404
Tel No. (909) 883-2440 Fax No. (909) 883-2998
Email : bzardouz1681.sb@gmail.com / *www.expertwitnessneurology.com*
**TAX ID# 95-4055352**

| Santa Ana Mailing Address: | San Bernardino,Mailing address: |
|---|---|
| PO Box 28883 | PO Box 28017 |
| Santa Ana, CA 92799 | Santa Ana, CA 92799 |

## DEPOSITIONS/TRAIL/ON GOING CASES:

| | | |
|---|---|---|
| 01/25/2016 | SCOTT PETTERSON | IME |
| 02/01/2016 | POMPEYO SILVA | PERSONAL INJURY-DEPOSITION |
| 02/17/2016 | DIANHVU NGUYEN<br>CASE#3..15-CV-01085-H-NLS | IME |
| 04/15/2016 | EVE FUDGE VS. GARY FUDGE<br>CASE#09D00765 | Deposition<br>Trial Date 05/31/2016 |
| 04/27/2016 | ANSELMO PABLO | IME |
| 06/23/2016 | DARYL LAIR<br>LAIR VS. PATTY'S CRITTERS<br>CASE#CIVDS1419425 | IME<br><br>Trial Date- 02/05/2018 |
| 08/08/2016 | GARY EVANS/TIMOTHY BEACH<br>Michael vs. Kana Pipeline<br>CASE#30-2014-00755792 | IME<br><br>February  2017 |
| 08/18/2016 | KANDI QUEEN-RICCI<br>Kandi Queen Ricci vs. Accentcare of California<br>CASE#15-7898-MDM<br>Trial with Arbitratoe<br>Hon. Michael Marcuss | Deposition |
| 09/22/2016 | FELICITAS GUZMAN<br>CLAIM#16002820 | QME-DEPOSITION |
| 10/12/2016 | MARTIN HOLLY<br>CLAIM#2016-03-08-0364-LPD-01 | IME |

| 01/19/2017 | HOLLINGSWORTH, DANA<br>Dana Hollingsworth vs. Carl Schmitt<br>CASE#CIVDS1515518 | Independent Medical Evaluation<br>Deposition |
|---|---|---|
| 01/23/2017 | MATNEY, RAYMOND<br>Linda Matney, et al vs. Ruth Veles<br>CASE#CIVDS1512887 | Independent Medical Evaluation<br>DEPOSITION<br>Trial Date- 2/26/2018 |
| 02/15/2017 | PATRICIA GLASS<br>CLAIM#16S18099 | QME-DEPOSITION |
| 01/23/2017 | ROSALYN POTTS<br>CLAIM#SCIH-035912 | WC DEPOSITION |
| 02/2017 | WARAICH SALEM AHMEED<br>vs. La Habra Police<br>Case#  14-5863 | IME DEPOSITION |
| 02/15/2017 | PATRICIA GLASS<br>Claim#16S18099 | QME-Deposition |
| 03/29/2017 | TRAVIS LABOY<br>Claim#205771 | QME-Deposition |
| 04/19/2017 | MAYNA BARLOW | PERSONAL INJURY-DEPOSITION |
| 05/08/2017 | MELINDA BARAJAS<br>CLAIM#002341002416WC01 | QME-DEPOSITION |
| 06/07/2017 | ELSIE MAYS<br>CLAIM#30154064224-0001 | QME-DEPOSITION |
| 06/15/2017 | HOLMAN, HAYES<br>CASE#CIVDS1611913 | IME |
| 06/26/2017 | JACOB HESTER<br>CLAIM#2067080 | QME-DEPOSITION |
| 07/07/2017 | ELSIE MAYS<br>Claim#30154064224-001 | QME-Deposition |
| 07/21/2017 | DIMAS GARCIA<br>CASE NO. 30-2015-00806904 | IME/EXPERT<br>ONGOING |
| 08/07/2017 | DONALD MCCULOCH<br>CLAIM#1003885-02 | IME |
| 08/23/2017 | DAVID HERRON<br>CLAIM#2066663 | QME-DEPOSITION |

| | | |
|---|---|---|
| 10/11/2017 | BEVERLY BROWN<br>CLAIM#1646974-1 | QME-DEPOSITION |
| 10/11/2017 | BASHIR ABDI<br>CLAIM#SDBG-0417199 | QME-DEPOSITION |
| 10/24/2017 | MARYAM KHOJASTEH<br>CLAIM#188386052 | WC DEPOSITION |
| 11/27/2017 | ANNA TABONI<br>CASE#RIC 1703294 | IME<br>DEPOSITION |
| 01/05/2018 | MARYAM KHOJASTEH<br>CLAIM#188386052 | QME-DEPOSITION |
| 01/05/2018 | ASHLEY KIM<br>CLAIM#201513302 | QME-DEPOSITION |
| 01/25/2018 | ROBERT SCRUGGS<br>CASE#ADJ10051032 | WC-DEPOSITION |
| *02/02/2018* | *DIMAS GARCIA*<br>*CASE NO. 30-2015-00806904* | *IME/DEPOSITION*<br>*ONGOING* |
| 02/09/2018 | SHANON HARDIN<br>CLAIM#WC648-A88291 | QME-DEPOSITION |
| 02/12/2018 | CLARK CONWAY<br>CASE# BLC1600089 | DEPOSITION<br>(Open Case |
| 02/23/2018 | RITA PATTNI<br>CLAIM#201272001 | WC DEPOSITION |
| 03/07/2018 | ANGELIA PALACIOS-NAVA<br>CLAIM#002097010012WC01 | QME-DEPOSITION |
| 04/11/2018 | RHONDA WALKER<br>CLAIM#004754000855WC01 | QME-DEPOSITION |
| 04/30/2018 | PATRICIA OGU<br>Claim#06295474 | QME-Deposition |
| *05/09/2018* | *KATHRIN SCHIESCHKE*<br>*Plaintiffs)*<br>*Case#30-2016-00849036-CU-PO-CJC* | *Trial* |
| 05/29-2018 | FREDDY KEIAHO<br>CLAIM#2040181 | QME-DEPOSITION |

| | | |
|---|---|---|
| 08/10/2018 | JOHN WEIRNER<br>CLAIM#64242 | QME-DEPOSITION |
| *11/29/2018* | *ERIC MARSHALL*<br>*CASE# 16CR-024582* | *IME/TRIAL-ON CALL*<br>*OPEN CASE* |
| 01/25/2019 | ROBERT SCRUGG<br>CLAIM#18W43F493665 | WC-DEPOSITION |
| 01/30/2019 | SEAN CAMPBELL<br>CLAIM#08019510 | QME-DEPOSITION |
| 02/12/2019 | CLARK CONWAY<br>CLAIM#2133492 | PERSONAL INJURY-DEPOSITION<br>OPEN CASE |
| 02/13/2019 | JEANNE BROWN<br>CLAIM#95-2000-0741 | QME-DEPOSITION |
| 02/19/2019 | CHRIS JOHNSON<br>CLAIM#TORR11-0189 | QME-DEPOSITION |
| 02/19/2019 | ALICE BURGER<br>CLAIM#556652418 | PERSONAL INJURY-DEPOSITION |
| 04/02/2019 | BABAK BANK<br>CLAIM#002456-493225-WC-01 | QME-DEPOSITION |
| 04/26/2019 | TIMOTHY DWIGHT<br>CLAIM#C345C6167623 | QME-DEPOSITION |
| *04/29/2019* | *ABRAHAM SOTELO*<br>*Case#CIVDS1723677* | *IME 04/29/19*<br>*DEPO 6/12/19*<br>*TRIAL 06/17/2019* |
| 05/08/2019 | TIMOTHY CASEY<br>CLAIM#186172412 | QME-DEPOSITION |
| 05/14/2019 | OMAR TREJO<br>CLAIM#2017020744 | QME-DEPOSITION |
| 05/20/2019 | DAVID WIXOM<br>CLAIM#CSBY10245 | QME-DEPOSITION |
| *06/04/2019* | *FRANCISCO CASTANEDA*<br>*Case#CIVDS1505048* | *DEPOSITION 06/04/2019*<br>*TRIAL 06/20/2019-6/26/2019*<br>*SB COURT @ 1:30PM* |

| 06/14/2019 | ALAMA RAJCEVIVH | PERSONAL INJURY-DEPOSITION |

**UPCOMING SCHEDULE**

| 06/24/2019 | ERIC MAGLASANG | DEPOSITION<br>UIM ARBITRATION |
| 06/28/2019 | APRIL BLAIR<br>CASE#BC688362 | TRIAL -ON CALL<br>06/28/19 LA SUPERIOR COURT<br>CONTINUED 11/2019 |
| 07/22/2019 | DONALD ZEHMS<br>CLAIM#119556 | QME-DEPOSITION |
| 08/12/2019 | FRANCISCO MARTINEZ<br>CLAIM#33080146 | QME-DEPOSITION |

**Bijan Zardouz M.D., Inc.**

Email : bzardouz1681.sb@gmail.com / *www.expertwitnessneurology.com*
TAX ID# 95-4055352

Santa Ana Mailing Address:
PO Box 28883
Santa Ana, CA 92799
T/714-540-2272 F/714-540-7206

San Bernardino Mailing Address
PO Box 28017
Santa Ana, CA 92799
T/909-883-2440 F/909-883-2998

## EFFECTIVE RATE AS OF JANUARY 1, 2018

## EXPERT WITNESS RATES AND POLICY

### INDEPENDENT MEDICAL EVALUATION:

FEES:        $850.00 includes 1 hour office visit up to 8 page report
RECORD REVIEW:    $425.00 per hour

### DEPOSITION FEES:

0-2 Hours deposition time $1,500.00 - Flat Fee
        $750.00/per hour if extend beyond 2 hrs.
        (charge at minumum 15 mins. intervals)

**COURT/TRIAL FEES:**    $4,500.00/Day — Flat Fee

**CANCELLATION POLICY:**    2 weeks in advance
**Missed Appointment / No show**    $ 625.00

## RETAINER FEE WILL BE REQUIRED

## FINAL BILLS NEEDS TO BE PAID PRIOR TO RELEASING REPORTS.

APPROXIMATE COST FOR ELECTRODIAGNOSTIC STUDY:

| Upper Extremity | Lower Extremity |
|---|---|
| Emg(1extremity)+ Ncv (5 nerves) = $550.00 | Emg(1extremity) + Ncv (7 nerves) = $720.00 |
| Emg(2extremities)+ Ncv(9 nerves) = $984.00 | Emg(2extremities)+ Ncv (7 nerves) = $815.00 |
| EEg (45min) = $801.00 | |

## ALL FEES ARE DUE 1 WEEK PRIOR TO THE APPOINTMENT DATE.

# EXHIBIT C

# Roger Clark
## Police Procedures Consultant, Inc.
10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com
July 3, 2019

Kevin S. Conlogue, Esq.
The Law Offices of Kevin S. Conlogue
1901 Avenue of the Stars, Suite 234
Los Angeles, CA 90067


Gabriel H. Avina, Esq.
Law Offices of Gabriel H. Avina
3781 Cimarron Street
Los Angels, CA 90018


***Regarding:   Hwa Sung Sim vs. Monica Duran, et al, Case No.: 1:16-cv-01051-DAD-
SAB.***


Dear Counsel:

Thank you for retaining me to analyze and render opinions regarding the August 31, 2104
in-custody use of force and injury of Mr. Hwa Sim (Mr. Sim) by Wasco State Prison
(WSP) Correctional Officer Monica Duran (Officer Duran).  Pursuant to the requirements
of Rule 26, I have studied the reports, statements, video recordings, photographs,
deposition transcripts, and other material (as listed below) provided to me thus far
regarding this case.  Please be advised that if/when any additional information is
submitted (including any additional depositions), a supplemental report refining my
opinions will be necessary.

It is also necessary to state at the beginning of this report that I do not make credibility
determinations in expressing my opinions.  That is, where there are differences in the
events proffered by Mr. Sim and/or others and Officer Duran and/or others I do not opine
for the trier of fact regarding who are the more believable witnesses.  I consider the
resolution of any such conflicts are obviously the purview of a jury to decide.

**<u>Materials Reviewed Thus Far:</u>**

1. Second Amended Complaint for Damages.

2. Stipulated Protective Order.

3. Plaintiff's Response to Defendant Duran's Request for Production of Documents, Set One.

4. Defendant Duran's Responses to Plaintiff's Second Request for Production of Documents.

5. Defendant Duran's Responses to Plaintiff's First Set of Interrogatories.

6. Plaintiff's Response to Defendant Duran's Interrogatories, Set One.

7. Defendant Duran's Responses to Plaintiff's Second Request for Production of Documents.

8. Defendant Johal's Responses to Plaintiff's Second Request for Production of Documents.

9. Letters from Inmates and Crime Incident Reports, Regarding Deputy Duran's Use of Force, PLTF-0022 - PLTF-0093.

10. Health Care Services From, Crime / Incident Report, & Miscellaneous Documents, Bate Stamped, AGO 0829 - AGO 1253.

11. WSP-RC In-Service Training Range Score and Safety Rules AGO 1280 - AGO 1297.

12. Wasco State Prison-Reception Center, CDC 837, Incident Report, Number: WSP-FAY-14-08-0423, May 28, 2018, Bate Stamped, AGO 1254 - AGO 1400.

13. Interview Transcripts:
    a. Mr. Sim, 8-31-14.MPG, Pages 1-3.
    b. Mr. Sim, 11-13-14.MPG, Pages 1-5.

14.    Deposition Transcripts:
        a.    Correctional Officer Monica Duran (shooting Officer), January 22, 2018 & Exhibits 31-39.
        b.    Mr. Hwa Sung Sim (Plaintiff), January 30, 2018, & Exhibits 41-73.

15.    Video:
        a.    Sim's Interview, August 31, 2014.
        b.    Sim's Interview, November 13, 2014.

16.    Photographs:
        a.    Jail, Incident, Bate Stamped, AGO 1166-1184.
        b.    Dining Hall B Side.
        c.    Officer Duran's Elevated Post.

17.    California POST Basic Learning Domains as Follows:
        a.    #1: "Leadership, Professionalism & Ethics."
        b.    #2: "Criminal Justice System."
        c.    #3: "Policing in the Community."
        d.    #20: "Use of Force."
        e.    #18: "Investigative Report Writing."
        f.    #31: "Custody."
        g.    #33: "Arrest Methods/Defensive Tactics."

18.    Title 15, California Code of Regulations (Jail Standards).

19.    <u>Performance-Based Standards for Adult Detention Facilities</u> (fourth edition), American Correctional Association in Cooperation with the Commission on Accreditation for Corrections, June 2004.

20.    <u>2006 Standards Supplement</u> American Correctional Association in Cooperation with the Commission on Accreditation for Corrections, April 2006.

**Apparent Uncontested Facts:**

There are a number of apparent uncontested facts evident in the material submitted for my review. They include:

1.    Mr. Sim was not in any way involved in an inmate brawl that erupted in the common/dining area on August 31, 2014.

2.    Mr. Sim complied with announced orders to get on the floor of the dining hall.

3.    Mr. Sim never threatened or aggressed any correctional officer or inmate during the brawl.

4.    Mr. Sim remained on the floor as ordered, and did not get up.

5.    Officer Duran fired her 40MM Penn Arm projectile into the cafeteria hall at close range.

6.    Officer Durian was trained that the 40MM Penn fires a high-energy blunt-force projectile that can cause catastrophic injuries and/or death when fired at a person's head and especially when fired at close range.

7.    Officer Duran's 40MM projectile struck Mr. Sim on the left side of his head which caused a significant bleeding wound on his head that required 6 staples to close.

8.    Mr. Sim remained on the floor even after he was shot.

9.    Mr. Sim was a distance of approximately 20 feet from the melee, when he was shot.

10.   Officer Duran has received target training on the 40MM weapon and demonstrated her ability to reliably hit her intended targets.


**Brief Overview of Events & Commentary:**

In August of 2014, Mr. Sim was a sentenced inmate and was under the aegis of Wasco State Prison personnel and on August 31, 2104, he was not a suspect in any crime and was not actively involved in any criminal activity.

Page 4 of 20

Wasco State Prison consists of several separate yards, including "A" yard.  Fist fights are a somewhat common occurrence on "A" yard.  When they occur Correctional Officers are dispatched to quell these confrontations and to protect the inmates not involved in the confrontations.  When the fights occur, a "Code 1" alarm is activated which consists of an audible alarm and red-light that is affixed to the "A" building.  The response by Correctional Officers is to immediately order all inmates to "get down" - meaning sit or lay down on the ground or floor.  When the "get down" order is broadcast, usually only non-participants obey and get down while those involved in the fighting ignore the command and remain on their feet.  Thus, the responding Correctional Officers can identify individuals that are involved in the altercation, and also prevent any other inmates from being injured by any force used by the Correctional Officers as they quell the fight.

This tactical response gives the Officers opportunity to direct their attention and use of force against those that are involved and to gain control of the incident without harming those inmates not involved in the fight.

On Sunday, August 31, 2014, at 10:04 a.m., a Code 1 was activated in Facility "A" dining hall B-side due to five inmates battering another inmate.  As required by policy, correctional officers ordered all inmates to get down inside the B-side dining hall.  Mr. Sim was present in Facility "A" dining hall B-side, but was not involved in the fight and was approximately 20 feet away from the fight when it broke out.  All inmates, including Mr. Sim, got down as commanded except for the inmates who continued to batter inmate Qintana.

Officer Figueroa, who was a responding officer and witness to the entire incident, stated that, "All Inmates got down except for the fighting Inmates who continued to batter Inmate QINTANA." (Crime / Incident Report Part A1 - Supplement, AGO 1136).

Officer Hanzel, also a responding officer, then deployed his state issued MK9-OC-pepper spray on the five inmates who instigated the battery, but the five inmates continued the battery on inmate Qintana.

At this point in the sequence of events, Officer Duran, who was stationed above dining hall B-side, at a secure, elevated, observation tower, testified that she recognized that Officer Hanzel's pepper-spray did not have the desired effect on the fighting inmates.

Subsequently, Officer Duran, who was holding her lethal Mini 14 rifle, transitioned from the lethal rifle to her less-lethal 40MM Penn Arm (launcher). The weapon discharges a 40MM less-lethal, sponge-like, projectile at high speed and is designed to incapacitate its target with a significant blunt-force impact.

Page 5 of 20

Officer Duran has testified that she received significant training on the launcher, which included target practice and her ability to hit the intended target. Officer Duran testified that she had to demonstrate at the range her repeated skill with the weapon before being authorized to fire it on an inmate. Officer Duran has also testified that she was familiar with how the impact projectile reacted after firing it.

> Q. Now, in terms of being authorized to carry the millimeter, is there any kind of qualification?
>
> A. You have to pass the 40 millimeter.
>
> Q. What does that mean?
>
> A. You have to hit two out of three sponge rounds on the silhouette.
>
> Q. And were you able to do that?
>
> A. Yes.
>
> Q. Do you remember what your actual goal was; three out of three or two out of three?
>
> A. I don't recall.
>
> Q. So as long as -- and how often is this qualification period?
>
> A. I do training every year.
>
> Q. So every year you have to do the two out of three?
>
> A. Yes.
>
> Q. What happens if you get one out of three?
>
> A. You have to re-qualify and do it until you pass.
>
> Q. Have you ever not passed qualification for the 40 millimeter?
>
> A. I don't recall.
>
> Q. Are you trained on what the risks are from improper usage of the 40 millimeter?
>
> A. Yes.
>
> Q. What are those risks?
>
> A. Serious injuries, could even cause death. (Duran Deposition, Pages 89-90)
>
> Q. I am not familiar with this artillery, this impact munition, I need your help to kind of help me understand it. So what happens when you typically discharge it during your training, do you follow through with --
>
> A. You follow through and you'll see if it hits the target and if it doesn't, sometimes you don't know where it hits.
>
> Q. Is it fair to say you normally do see the round hit the target or you usually do see the follow-up of where the round hits?

A.  Yes.

Q.  That's more normal, that's more the case than not the case, correct?

A.  Not always. In other words, training out there is different from being in an incident you have a target, it's not moving, it's there. (Officer Duran Deposition, Pages 98-99)

Q.  There's a few things I need some help on. First of all, how often do you have to qualify for range shooting?

A.  Once a year per training.

Q.  So every year you have to qualify, correct?

A.  Yes.

Q.  Did that ever change to quarterly?

A.  It can be quarterly if depending on what post you are assigned to.

Q.  Was yours changed from annually to quarterly at some point?

A.  I've been under quarterly when I was a coverage officer or control relief, we do have to qualify quarterly.

Q.  So difference of why the qualifying periods went from annually to quarterly are what?

A.  Depending on your post that you are in. If you are in a gun post, you do qualify quarterly.

Q.  Is that true for everybody?

A.  I believe so.

Q.  Was -- well, have you failed to qualify any annual shooting tests?

A.  No, I've never failed. I've gone to my block training every, every year that I am scheduled to go. (Duran Deposition pages, 106-107)

According to Officer Duran, after recognizing that the use of O/C spray was ineffective, she acquired her 40MM launcher, stabilized it on a ledge of the elevated observation tower, and *sighted it on one of the inmates who was assaulting inmate Qintana* (Emphasis added).

It cannot be overstated that when Officer Duran fired, Mr. Sim was clearly in a location away from the fight, (approximately 20 feet away) and with two metal tables and attached benches between Mr. Sim and the fighting inmates. Additionally, Mr. Sim was not standing - he was laying face-down, and prone on the floor near the western edge of the dining area as ordered. Nevertheless it is apparent that Officer Duran trained her launcher on inmate Ruiz and not the fighting inmates when she fired her weapon.

As Mr. Sim lay on the floor, the projectile Officer Duran fired from her launcher struck Mr. Sim on the left side of his head and knocked him unconscious and created a gaping

Page 7 of 20

wound. Despite everything that had happened, Mr. Sim remained on the floor, in exact compliance to the Officers' orders. Subsequent medical treatment documented that after being struck by the projectile, Mr. Sim sustained a head-wound requiring six-staples. Mr. Sim also sustained a concussion, bleeding in his brain, and a traumatic brain injury.

Mr. Sim has testified that he continues to suffer from this head injury. He has lucid nightmares, reliving the incident which causes him to lose bladder control and urinate himself, severe migraines, and is often nauseous. Mr. Sim continues to suffer emotional and mental injuries from this incident, and has been diagnosed with Post Traumatic Stress Disorder.

According to Mr. Sim, he knew of Officer Duran but had never had any negative interaction with her and was not aware that she had any reason to dislike him.

> Q.      Did you ever interact with Officer Duran prior to August 31, 2014?
> A.      Nothing out of the ordinary. Just like "Good Morning" and stuff like that, but we never had any bad or good altercations. Just, you know - -
> Q.      Were any of your interactions with Officer Duran negative?
> A.      No.
> Q.      Were any of your interactions with Officer Duran confrontational?
> A.      No. (Sim Deposition, Page 48)

## Report Narrative by Officer Raymond Figueroa Regarding the incident:

"On Sunday, August 31, 2014 at 1004 hours a code 1 was activated in Facility "A" Dining Hall B-side due to inmates CABALLERO AL-8304, RUIZ AE3437, MARQUEZ AR3538, JIMENEZ AS5794, and MARTINEZ T-27544, committing the act of battery on Inmate QUINTANA AM-7791 necessitating the use of force. Specifically on this date, Facility A staff saw Inmates CABALLERO, RUIZ, MARQUEZ, JIMENEZ and MARTINEZ striking inmate QUINTANA in the head and upper body with their fist. QUINTANA had his hands over his face not fighting back. Officers activated the audible alarm and announced a code 1 via institutional radio as they ordered all inmates to get down inside the B-side Dining Hall. All Inmates got down except for the fighting inmates who continued to batter Inmate QUINTANA. Staff ordered all involved inmates to stop fighting but the inmates continued to batter QUINTANA. Officer Hanzel deployed his state issued MK9 OC pepper Spray striking Inmates MARTINEZ,

Page 8 of 20

CABALLERO, RUIZ, JIMENEZ, QUINTANA in the face.   The inmates continued to batter Inmate QUINTANA.  The dining observation Officer Duran discharged one (1) XM1006 exact impact sponge round from her state issued Penn Arms 40 mm launcher serial number GS0557 and was unable to see where the round hit.  The use of force had its desired effect and all inmates got down in a prone position.  Once all the involved inmates complied with orders, Staff discovered Inmate SIM AK4040 with injuries to his head even though he was not involved in the incident.  Medical staff was immediately summoned to Facility "A" Dining B-side.  Medical staff responded to the scene and immediately administered medical attention and escorted inmate SIMs to the Treatment and Triage Area on a medical gurney.  The involved inmates were placed in restraints and escorted to holding cells in Facility "A" Program pending medical clearance, decontamination and re housing.  After being medically cleared and decontaminated and while waiting re housing, Inmate MARTINEZ complained about being unable to breath.  A code 1 medical was announced via institutional radio.  Medical staff responded and escorted inmate MARTINEZ to the Treatment and Triage Area for additional medical evaluation." (Crime / Incident Report Part A1 - Supplement, AGO 1136)

**Mr. Sim's Brief History os His Medical Treatment Post Head Injury:**

After Mr. Sim was shot in the head, he was taken to a hospital where he received six staples for his head wound.  Mr. Sim was released within a few hours and transported back to Wasco State Prison. After sustaining a serious head injury and being knocked unconscious with a concussion, medical professionals working at Wasco State Prison did not order a CT Scan for Mr. Sim's head nor was Mr. Sim monitored for the mandatory 24 hours after sustaining the head injury.

On September 1, 2014, Mr. Sim woke up with a large amount of blood and vomit in his bed, and Mr. Sim was then admitted to a hospital for a CT scan and an MRI of his brain.

On September 4, 2014, Mr. Sim was released from the hospital and returned to Wasco State Prison.  Over the next ten days, Mr. Sim submitted several medical request forms for a medical evaluation by medical professionals working at Wasco State Prison because Mr. Sim was suffering from dizziness, nausea, and vomiting, but medical professionals working at Wasco State Prison ignored Mr. Sim's medical request forms and provided Mr. Sim with no medical treatment or monitoring for those ten days.

Later in September 2014, Defendants Johal and Patel examined Mr. Sim and told him that he is lying about his dizziness, nausea, and vomiting, and that he is making a big deal out of nothing.

Mr. Sim also requested in September 2014 to medical professionals working at Wasco State Prison that he be seen by an outside specialist for his ongoing complications resulting from his head injury, and medical professionals working at Wasco State Prison refused to send Mr. Sim to a specialist for his head injuries.

On October 5, 2014, Mr. Sim had a seizure in the dayroom of his building which required his admittance into a hospital.  Prior to being shot in the head, Mr. Sim had never suffered a seizure nor did he have a history of seizures.

In March of 2015, Mr. Sim blacked out in the central kitchen in Facility "A." Prior to being shot in the head, Mr. Sim had no history of blackouts.

It appears that medical professionals working at Wasco State Prison failed to take the necessary steps for Mr. Sim to be examined by a specialist for his head injury as to determine the cause of his seizures and blackouts.

**<u>Training Regarding Blows to the Head:</u>**

It is important to note that seizures, nausea, vomiting, and migraines, all of which Mr. Sim continues to experience, appear consistent with blows or kicks to Mr. Sim's head.  (1 expect that retained medical experts will expand this point further.) However, Officers are trained by POST that blows to the head can result in serious injury and/or death, and are not to use blows to the head absent the protection of life. Mr. Sim had complied with Correctional Officers' orders, and was no the floor in a prone position, no Officer's, or inmate's, life was in danger; therefore, any blows to the head of Mr. Sim were out of policy, reckless, and excessive.

> "Punches to the head or face can cause severe injuries to the individual, and additionally carry a high risk of injury to the deputy using such force. Deputies should only use this extremely dangerous level of force where lower force levels are not available or are ineffective, especially when the individual is already handcuffed and less severe use of force alternatives are available. See Graham, 490 U.S. at 396. LASD's Deputy Field Operations Manual and Defensive Tactics Manual state that "personnel are discouraged from striking an attacker's head with a fist," and encourages deputies "to

Page 10 of 20

use an open hand palm heel strike to lessen the potential of cutting injuries." LASD policy prescribing situational uses of force essentially ranks head strikes as akin to deadly force, stating they are appropriate only when a subject's behavior is "likely to result in serious injury or possibly in the death of a person." Punches to the face, as opposed to the head, are not considered deadly force, but this poor tactic can result in more injury to a subject and a deputy. The pattern of head and face strikes against handcuffed individuals we observed in LASD appears unreasonable under the Fourth Amendment." (DOJ Correspondence: "Investigation of Los Angeles County Sheriffs Department Stations in Antelope Valley," June 28, 2013, Page 32.)

## POST Training Regarding Force Options:

POST Trains that a Subject's resistance or actions to an arrest will determine the type of force used by a peace officer (including corrections officers). The following chart illustrates how a subject's resistance or actions should be commensurate to the force applied by an officer:

*Cooperative* - (no resistance):

- Mere professional appearance
- Nonverbal actions
- Verbal requests and commands

*Passive non-compliance* - Does not respond to verbal commands but also offers no physical form of resistance:

- Verbal requests and commands
- Officer's strength to take physical control, including lifting/carrying
- Control holds and techniques to direct movement or immobilize a subject

*Active resistance* - Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally signaling an intention to avoid or prevent being taken into or retained in custody:

Page 11 of 20

- Control holds and techniques to control the subject and situation
- Use of personal weapons in self-defense and to gain advantage over the subject
- Use of devices to secure compliance and ultimately gain control of the situation

*Assaultive* - Aggressive or combative; attempting or threatening to assault the officer or another person:

- Use of devices and/or techniques to secure compliance and ultimately gain control of the situation
- Use of personal body weapons in self-defense and to gain advantage over the subject

*Life-threatening* - Any action likely to result in serious injury or possibly the death of the officer or another person

- Utilizing firearms or any other available weapon or action in defense of self and others

POST also trains that officers must take into account the totality of the circumstances when selecting a reasonable force option, and that they must use the force option appropriate for the situation as conditions may change rapidly. Thus, officers must continually reevaluate the subject's action and must be prepared to transition as needed to the appropriate force options. In this incident, Mr. Sim was totally compliant. In view of his absolute and total compliance, absolutely *no force whatsoever* - let alone the use of the 40MM weapon - was justified. (Emphasis added.)

If, as testified by Officer Duran, she is a skilled 40MM weapon handler, then she should have had no difficulty training the launcher on the assailants and making contact with them. She has testified that she has never failed her launcher training, she is trained annually on the launcher, and she abides by policy, with respect to the launcher. It appears that, either, Officer Duran deliberately took sight of Mr. Sim and trained her weapon on his head and fired at him, or she prevaricated during her testimony, when she testified that she was properly trained and capable of using the launcher, either way, her actions cannot be explained away or excused.

Page 12 of 20

**Opinions Thus Far:**

1.  Throughout the country, Law Enforcement Officers (including Correctional Officers) are trained regarding the methods and means of response when dealing with prisoners in their custody. Above all, they are required to be ethical and professional in their contacts. In this instance, Officer Duran appears to have taken sight of Mr. Sim, trained her launcher on Mr. Sim's head, and fired one round at the left side of Mr. Sim's head. Therefore, Officer Duran violated policy, law, and Mr. Sim's constitutional rights, and caused him serious mental and physical pain.

2.  As stated above, Mr. Sim can only be viewed in this incident as a totally compliant and cooperative subject and, as such, no force whatsoever was lawfully authorized.

3.  If, as testified by Officer Duran, she is an adroit launcher weapon handler, she has never failed her launcher training, she is trained annually on the launcher, and she abides by policy, with respect to the launcher, then it appears that, either, Officer Duran deliberately took sight of Mr. Sim and trained her weapon on his head and fired at him, or she prevaricated during her testimony, when she testified that she was properly trained and capable of using the launcher, either way, her actions cannot be explained away or excused.

4.  The deliberate infliction of force by an officer is criminal conduct and is defined in the criminal code as an assault under color of authority - 149 P.C.

5.  The infliction of force from a 40MM weapon on the head of a human being is an infliction of force likely to cause great bodily harm and/or death and is defined in the criminal code as an assault with a deadly weapon - 245 P.C.

**My Qualifications To Review This Case:**

My opinions are based in part on my training, professional experience and education. I am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD).

I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5, 1988). The POST Command College was a Masters level two-year course of study requiring a thesis, in Police Administration, with the diploma awarded by the California Department of Justice (and not the California University system).

During the course of my service with the department, I had a wide range of duties. Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail). I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units. I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers. Those cases included possible complaints relating to both misdemeanor and felony crimes. They frequently required follow up investigations and interviews before the exact nature of the case could be determined. As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later.

During that time, I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator. At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance. This process gave me an expertise in the POST Basic curriculum. I also supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals. I held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption. The majority of our cases were homicide cases, including the murder of police officers. Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy busts, and reverse stings. We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations. These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations. In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Page 15 of 20

Additionally, the majority of the over 1750 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents. From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous. Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension. This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department. These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Florida, Illinois, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and Wisconsin. I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury. I have also submitted written opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New York, Oregon, Kentucky, and Wyoming Federal and State Courts. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to

Page 16 of 20

Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana.  I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons."  On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert."  On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas).  As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden.  The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in *Burns v. City of Redwood City*, 737 F.Supp2nd.1047.  I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007).  The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008).  The *Torres* case was appealed to the U.S. Supreme Court and returned for trial.  I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.* (USDC Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in significant policy changes within the MPD.  My opinions supported argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1102 (9th Cir. 2014).  The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867 (9th Cir. 2011), and *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011).  The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).  The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement

Page 17 of 20

objective, in *AD v. California Highway Patrol*, 712 F. 3d 446 (9th Cir. 2013).  The Fifth
Circuit drew from my expert report regarding search and seizure, investigations and no-
knock requirements in *Bishop et al. v. Arcuri et al.*, 674 F.3d 456 (5th Cir. 2012).  The
Ninth Circuit also drew from my expert report regarding the use of impact weapons
(PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012).  I was
the expert in the Ninth Circuit opinion regarding the allegations proffered by police
officers and their use/display of firearms against civilians in *Green v. City and County of
San Francisco*, 751 F.3d 1039 (9th Cir. 2014).  Most recently, I was the expert in an
important Ninth Circuit opinion regarding the allegations proffered by police officers and
their use of lethal force against unarmed persons in *Jennifer Cruz, et al., v. City of
Anaheim, et al.*, 765 F.3d 1076 (9th Cir. 2014).  I was the expert at trial in the Ninth
Circuit opinion regarding the order of evidence at trial in *Estate of Manuel Diaz, v. City
of Anaheim*, et al., No. 14-55644.  My opinion is quoted in the Ninth Circuit opinion
regarding the use of lethal force in *A.K.H. a minor, et al, v. City of Tustin, et al.*, No. 14-
55184.  My opinions supported argument in the Ninth Circuit case: *Estate of Angel Lopez,
et al., v. Kristopher Michael Walb*, No. 14-57007 (not for publication) wherein the Ninth
Circuit Affirmed the Denial of Summary Judgement by the District Court.  My opinions
supported argument in the Ninth Circuit case: *Estate of Shakina Ortega, et al., v. City of
San Diego, et al.*  No. 14-56824 (not for publication) wherein the Ninth Circuit Affirmed
the Denial of Summary Judgement by the District Court.  My opinions supported
argument in the Ninth Circuit case: *Jerry Newmaker, et al., v. City of Fortuna, et al.*  No.
14-15098 (for publication).  My opinions supported argument in the Ninth Circuit Case:
*Tonya E. Shirar, v. Miguel Guerrero, et al.* regarding use of lethal force and "suicide by
cop," No. 15-55029 (not for publication).  My opinions supported argument in the Ninth
Circuit Case *Angel Mendez; Jennifer Lynn Garcia, v County of Los Angeles, et al.*, Nos.
13-56686, and 13-57072 (for publication) and which was settled before the Supreme
Court, No. 16-369, regarding the use of lethal force and searches.  My opinions supported
argument in the Ninth Circuit case: *Chien Van Bui, et al, v City and County of San
Francisco, et al*, No. 14-16585 (not for publication), regarding the use of lethal force.  My
opinions supported argument in the Sixth Circuit opinion, Case No. 16-5322, *Carey
Woodcock v. City of Bowling Green, et al,* Originating Case No. 1:13-cv-00124 regarding
the use of lethal force.  My opinions supported argument in the Ninth Circuit opinion,
Case No. No. 14-17388 (for publication), *Johnathan Jones, et al v. Las Vegas
Metropolitan Police Department, et al,* Originating Case No. 2:12-cv-01636- regarding
the use of lethal force and Taser weapons.  My opinions supported argument in the Ninth
Circuit opinion, Case No. 16-15606 (for publication), *Christian Longoria, et al v. Pinal
County, et al,* Originating Case No. 2:15-cv-00043, PHX SRB, regarding the use of lethal
force after a vehicle pursuit.  My opinions supported argument in the Ninth Circuit case:
*S. B. v. County of San Diego*, 864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding
issues of qualified immunity.  My opinions supported argument in the Tenth Circuit case:

*Russell Tenorio v. Brian Pitzer,* Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of qualified immunity and use of deadly force.  I participated as a retained expert in the USDC Fifth District case, Stephen McCollum et al., v. Texas Department of Criminal Justice, et al., Case No.3:12-CV-02037 regarding in-custody hyperthermia deaths.  My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 17-55116 (for publication), *Susan Mellen, et al v. Marcella Winn, et al,* D.C. Case No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified Immunity.  My opinions supported argument in the Ninth Circuit Case *Richard Vos; Jenelle Bernacchi, v City of Newport Beach, et al.,* Nos. 16-56791 (for publication) and which was settled by the Supreme Court, No. 16-56791, regarding the use of lethal force and mental illness.

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006).  The California Supreme Court drew in part from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al. v. County of San Diego et al.*, 57 Cal.4th 622 (2013).  I was quoted by the California Appellate Court (Second Appellate District, Division Three) in *B.B., a Minor, etc., et al., v. County of Los Angeles, et al., Case No. B264946 Super. Ct. Nos. TC027341, TC027438, BC505918* regarding positional asphyxia issues.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of Administration by United States Attorney General, the Honorable Edwin Meese III, for my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography).  On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical five-year effort to bring this law into effect.  California Penal Code Section 311.11 is required training for all Law Enforcement Officers in California and taught extensively in the POST Basic Learning Domain #9: "Crimes Against Children,"pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of Tamir Rice by City of Cleveland police officers.  In March, 2016 I was requested by the Delaware Attorney General to review and provide my opinions regarding the shooting death of Jeremy McDole.  The AG report was published May 12, 2016.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case.  A number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs. I own each, along with the download software. I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices. I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage. Two published examples are *Lee v. Nashville*, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007).

My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in *William Mears, et al., v. City of Los Angeles, et al,* USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in *Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al,* USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW, and on November 1, 2018 in Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS. There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed July 3, 2019 at Santee, CA.


*Roger A. Clark*
Roger A. Clark

# EXHIBIT A

**ROGER A. CLARK**
*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present.................................................................. **26 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 1800 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003........................................................................ **9 years**

I substitute teach at all levels in the school district (elementary to high school).  As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993................................**27 years 4 months**

**Note:**  In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn
and 3,000 civilian personnel and a daily County Jail inmate population of
23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

**1.  Field Operations Region I**
    **NORSAT**                           11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and
arrest major (career) criminal offenders.  This unit was designed as a
multijurisdictional effort for the cities in the northern region of Los Angeles
County.  The command consisted of four (4) Sergeants, seventeen (17)
Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3)
civilian employees.  The 1992 budget set at $1.5 million.  The arrest rate
averaged 500 career criminal arrests per year with a 97% conviction rate and
no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

**2.     Executive Offices**
       **Reserve Forces Bureau**      05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for
coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

-2-

volunteers, and 450 law enforcement explorer scouts. The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

- Total restructure of the Academy training process for reserve Deputies.
- Implementation of upgrade programs to move lower level reserves to level I status.
- Departmental Reserve Certification procedures.
- Annual leadership seminar.
- The Reserve News, a nationally recognized police magazine.
- Computerization of the Bureau.

3.    **Field Operations Region I**
      **Crescenta Valley Station**      04/01/80 to 05/01/84  **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

- **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
- **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
- **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
- **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

- Negotiation of an enhanced city contract (at a savings to the City).
- Formation of a volunteer community support group.
- Development and implementation of an integrated community emergency response plan.
- High School undercover narcotics operation.
- Restructure of the Station Detective Bureau.
- The annual station picnic, which was effective in boosting station morale.

4.      **Custody Division**
        **Central Jail**            04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of California, with a daily inmate population of seven thousand (7,000), an assigned staff of six hundred (600), and two hundred (200) civilian personnel. My service at this command was equally divided into two major assignments:

- •      Training and Logistics Lieutenant (04/01/79 to 04/01/80).
- •      Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

- •      "Hot Fire" Training program, which is now a State (POST) mandated training module for all custody personnel throughout California.
- •      The "Defend in Place" fire safety operational plan for jail facilities.
- •      New fire safety specifications for jail bedding and mattresses.
- •      The development of fire safe jail mattress material.
- •      The development of a facility emergency response plan.
- •      The computerization of training, timekeeping, and scheduling for the facility (800 sworn and 200 civilian personnel).
- •      "Spouse day at CJ"--A program for spouses of employees.


**Service as a Sergeant (6 Years, 4 Months):**


5.      **Administrative Division**
        **Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my previous assignment (Emergency Operations Bureau).  The unit provides millions of dollars in free federal excess and surplus food and property from clothing to heavy equipment and aircraft to the department each year.  I am very proud of this contribution to the Department.


6.      **Patrol Division**
        **Emergency Operations**     02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the activities of the Department's planning    unit with emergency operations planning and preparation.  I was assigned as the Personnel and Logistics Sergeant.

-4-

Significant contributions while assigned at this command are:

- Formation of a new County Emergency Operations Center.
- Participation in the 1974 Federal earthquake studies of Los Angeles County.
- Development of the Department's specialized Field Command Post equipment.
- Development of the Department's Field Booking Team.

**7.      Patrol Division**
**Civil Defense Bureau**      12/01/73 to 02/01/74  **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.

**8.      Patrol Division**
**San Dimas Station**      12/12/72 to 12/01/73  **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.

**9.      Technical Serviced Division**
**Communications Bureau**      12/01/71 to 12/12/72  **12 months**

I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.

**Service as a Deputy (6 Years, 0 Months):**

**10.      Patrol Division**
**San Dimas Station**
**Detective Bureau**      01/01/70 to 12/01/71  **23 months**

I served as a Station Detective assigned to the evening watch.  I handled the first response to all crimes requiring investigations.  I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

-5-

11. **Patrol Division**
    **San Dimas Station Patrol**   01/29/68 to 01/01/70 **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy, Patrol, and Traffic.

12. **Technical Services Division**
    **Transportation Bureau**   11/01/67 to 01/29/68 **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.

13. **Custody Division**
    **Central Jail**   05/06/66 to 11/01/67 **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.

14. **Administrative Division**
    **Academy**   01/17/66 to 05/06/66 **04 months**

I was a Sheriff's trainee assigned to Class #110.

15. **Custody Division**
    **Central Jail**   12/01/65 to 01/17/66 **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.

### DEGREES AND CERTIFICATION

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

# EXHIBIT B

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

July 3, 2019

Kevin S. Conlogue, Esq.
The Law Offices of Kevin S. Conlogue
1901 Avenue of the Stars, Suite 234
Los Angeles, CA 90067

Gabriel H. Avina, Esq.
Law Offices of Gabriel H. Avina
3781 Cimarron Street
Los Angels, CA 90018

**Regarding:**    ***Hwa Sung Sim vs. Monica Duran, et al, Case No.: 1:16-cv-01051-DAD-SAB.***

Dear Counsel:

My fee schedule is as follows:

- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $3,500.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account.  Payment is due upon receipt of the invoice.

There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

*Roger A. Clark*
Roger A. Clark

Page 1 of 1

# EXHIBIT C

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

## UPDATED LIST OF SWORN TESTIMONY FOR RULE 26

### June 26, 2015 to June 24, 2019
(Revised June 26, 2019)

**Deposition**: June 26, 2015.  C.E.W. a minor, et al., v City of Hayward, et al., Case No.: C 13-04516 LB.

**Trial:**  July 1 & 2, 2015.  Juan Herrera, v. City of Los Angeles, et al.  USDC Case No. 2:13-cv-08831-ABC AS.

**Deposition:**  July 10, 2015.  Perla Carr, v. Montgomery County, Texas, et al., Case No.: 4:13-cv-2795.

**Deposition:**  July 13, 2015.  Stephanie Bruno, et al, v. Donald Hubbard, et al., Circuit Court, Jackson County (Missouri), Case No. 1416-CV 18501.

**Deposition:**  July 16, 2015.  Donna Lancaster, v. Kansas City Board of Police Commissioners, et al., Case No.:4:14-cv-00171-SOW.

**Deposition:** July 23, 2015.  Sharam Borjkhani, et al. v. CHP, et al.  Superior Court, State of California (Los Angeles County).  Case No.  BC487580.

**Deposition:** July 27, 2015.  Michael Fulton v. Brian Thayer, et al., Case No.: CV10-00137-JCG.

**Deposition:** July 29, 2015.  Orly Vered, et al., v County of Los Angeles, et al., Case No.: CV14-9559 MWF (MANx).

**Trial:** August 6, 2015  Oscar Morales v. City of Los Angeles, et al.  USDC Case No. CV 11-04757 SVW (Shx).

**Deposition.**  August 11, 2015  Kimberly Mitchell, et al, v. Muhlenberg Community Hospital, et al.  Muhlenberg Circuit Court, Commonwealth of Kentucky Case No. 12

**Deposition:**  August 12, 2015.  Russell Martinez v. Joseph Salazar, et al., D.N.M. Case No. 14-cv-00534 KG/WPL.

**Deposition**. August 17, 2015.  Dr. Gary D. Frakes, v. Sergeant William R. (Billy) Masden and Captain Dustin Ott. USDC (Texas) Case No. 4:14-cv-1753.

**Deposition.**  August 20, 2015.  Emmanuel Bracy, v. City of Los Angeles, et al.  Case No. C13-09350 (JC).

**Deposition.**  August 24, 2015.  Porfirio Santos-Lopez, an Individual v. City of Long Beach et al., Case No.: CV14-05781-FMO-AS.

**Deposition:**  August 26, 2015.  Aaron Vincent Arde Catacutan, v. City of San Jose, et al. Superior Court, State of California (Santa Clara County) Case No. 113 CV 254501.

**Deposition:**  August 31, 2015.  Sammy Sanchez, et al v. City of Tucson, et al.  USDC Case No. 72-1576857.

**Trial:**  September 8, 2015.  Cash Jerome Ferguson-Cassidy, v. City of Los Angeles, et al., USDC Case No. CV14-06768 SVW (JPRx).

**Deposition:**  September 10, 2015.  Juventino Rodarte, v. Alameda County, et al.  USDC Case No. 4:14-cv-00468-KAW.

**Deposition:**  October 2, 2015.  Brennan Colbert, v. County of Kern, et al., Case No.: 1:13-cv-01589-JLT.

**Trial:**  October 7, 2015.  Michael Fulton v. Brian Thayer, et al., Case No.: CV10-00137-JCG.

**Trial:**  October 16, 2015.  Kristy Beets, et al, v. County of Los Angeles, et al.  Superior Court, State of California (County of Los Angeles) Case No. KC 057667.

**Trial:**  October 19, 2015 & October 20, 2015.  Christopher J. Windsor, v. Chris Eaves, et al., Case No. 5:13-CV-00038.

**Deposition:** October 27, 2015.  Francisco Arrieta, et al., v. County of Kern, et al., Case No.:1:14-CV-00401-LJO-JLT.

**Deposition:**  October 28, 2015.  Lorenzo Adamson, an individual, v. City of San Francisco, et al., Case No.: 4:13-cv-05233-DMR.

**Trial.**  October 29, 2015.  Robert J. Reese, Jr. v. County of Sacramento, et al., Case No. 2:13-cv-00559 JAM DAD.

Trial.  November 3, 2015.  Lance Ricotta, v. City of Imperial, Ca, et al., Case No.: 13CV1454 DMS WVG.

Page 2 of  23

**Deposition.** November 9, 2015.  Dorothy Jean Sams, et al, v. City of Los Angeles, et al, Superior Court (Los Angeles County) Case No. BC537879.

**Trial**. November 10 & 11, 2015.  People v. Former Webster Police Officer D. Bassett. 339th District Court, Harris County, Texas, Cause No. 1411316.

**Trial**. November 12, 2015.  People v. Marcus Stewart, Superior Court (Santa Clara County), State of California Case No. C1370824.

**Trial**. November 13, 2015. Lorenzo Adamson, an individual, v. City of San Francisco, et al., Case No.: 4:13-cv-05233-DMR.

**Deposition:** November 18, 2015.  Miguela Nuila, v. City of Los Angeles, e al.  USDC Case No. CASE NO. CV 14-9160 DDP (PJWx).

**Deposition:** November 18, 2015.  Damion Russell et al., v. City of Los Angeles, et al., Case No.: CV-14-09433-JFW (Ex).

**Deposition:** November 20, 2015.  Raymond Newberry et al. v. County of San Bernardino, ED-CV14-02298 JGB (SPx)

**Deposition:** November 23, 2015.  Robert Barron, v. City of Redding, et al., USDC Case No.: 2-14-CV-01107 MCE-CMK.

**Deposition:** December 2, 2015.  Sukhwinder Kaur, et al, v. City of Lodi, et al.  USDC Case No. 2:14-cv-00828 GEB-AC.

**Deposition:** December 3, 2015.  Isaiah Salvadore Zepeda, te al, v, County of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC450200.

**Grand Jury Testimony:** December 7, 2015.  People v. Officer Timothy Loehman and Officer Fran Garmback, Cuyahoga County (Ohio) Grand Jury. [Civil Case No: 14 Civ. 02670.]

**Trial:** December 9 & 10, 2015.  Superior Court, State of California (Los Angeles County), People v. Ugene Park & Sarah DeLeon, Case No. 5SY03653, DR No. 15-1087.

**Trial:** December 15, 2015.  Alejandra Ruiz, et al., v. City of Medford, et al.  Circuit Court, State of Oregon (Jackson County), Case No. 13CV07663.

**Trial:** December 17, 2015.  Isaiah Salvadore Zepeda, et al, v, County of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC450200.

**Deposition:** December 22, 2015.  Jordan Edward Branscum, v. San Ramon Police Department, et at. Case No. Case No.: C11-04137 LB.

**Deposition**: December 28, 2015.  Susan Rush, v. City of Santa Monica, et al.  USDC Case No. BC568815.

**Preliminary Hearing & Motion to Suppress:**  January 5, 2016.  People v. Gregory Williams, Superior Court, State of California (Solano County), Case No. VCR223119.

**Preliminary Hearing & Motion to Suppress:**  January 5, 2016.  People v. Gregory Williams, Superior Court, State of California (Solano County), Case No. VCR223119.

**Deposition:**  January 8, 2016.  Doris Ray Knox v. City of Fresno, et al.  USDC Case No. 1:14-CV-00799 EPG.

**Deposition:**  January 11, 2016.  Refugio Nieto, et al., v. City and County of San Francisco, et al., Case No.: C14-03823-NC.

**Deposition:**  January 12, 2016.  Garry Bradley, v. County of Los Angeles, et al. Superior Court, State of California (Los Angeles County), Case No. BC473200.

**Deposition:**  January 13, 2016.  Jesse Trevino, v. Bakersfield Police Department, et al., Case No. 1:14-CV-01873 JLT.

**Deposition:**  January 21, 2016.  Richard A. Collender, et al., v. City of Brea, et al.  USDC Case No. SACV 11000530 AIJ-MLGx.

**Deposition:** January 26, 2016.  The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Trial:**  February 2 and 3, 2016.  Dorothy Jean Sams, et al, v. City of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC537879

**Deposition:**  February 4, 2016.  Rayven Vinson, et al, v. City of Los Angeles, et al. USDC Case No.: CV 14-4488-PLA.

**Deposition:**  February 10, 2016.  V.W., a minor, et al., v. Robert Nichelini, et al., Case No.: 2:12-CV-01629-LKK-AC.

**Deposition:**  February 12, 2016.  Maria Del Carmen Rivas, et al., v. City of Los Angeles, et al., Case No.:2:15-CV-000456-JFW-JEM.

**Trial:**  February 19, 2016.  Esperanza Booke, et al, v. City of Sanger, et al., Case No.: 1:13-cv-

00586-AWISAB.

**Deposition**: February 22, 2016.  Fernando Del Castillo, et al., v. City of Tempe, et al., Case No.: CV-214-1945-PHX-DLR.

**Deposition:**  February 29, 2016.  J.A.L., a Minor, et al, v. Mike Santo, et al.  USDC Case No.: CV-15-00355.

**Trial:**  March 2, 2016.  Richard A. Collender, et al., v. City of Brea, et al.  USDC Case No. SACV 11000530 AIJ-MLGx.

**Deposition:**  March 3, 2016.  Michael A. Storms, v. City of Clarkston, et al., Case No.: 2:14 CV 000254 TOR.

**Trial:**  March 7, 2016.  Refugio Nieto, et al., v. City and County of San Francisco, et al., Case No.: C14-03823-NC.

**Deposition:**  March 15, 2016.  J.J.D. v. City of Torrance, et at.  USDC Case No. CV14-07463-BRO-MRW.

**Trial:**  March 17, 2016,  People v. Mark Cappello, Superior Court, State of California (Sonoma County).  Case No. SCR-630974.

**Deposition:**  March 23, 2016.  Ioana Aronovici, v. City of Anaheim, et al., Orange County Superior Court Case No. 30-2014-00762502 CU-PA-CJC.

**Deposition:**  March 25, 2016.  Reynalda Molina, et al, v. City of Visalia, et al.  CASE NO. 1:13-CV-01991-LJO-SAB.

**Deposition:**  April 4, 2016.  Ayounna McClinton (Estate of Duane Strong), v. City of Tallahassee, et al., Case No.: 4:15-CV-278-RH/CAS.

**Trial:**  April 1 & 5, 2016.  K.C.R. (Rivera) a minor, et al, v. County of Los Angeles, et al.  USDC Case No. CV 13-03806 PSG (SSx).

**Trial:**  April 5, 2016.  J.J.D. (Dolak) v. City of Torrance, et al.  USDC Case No. CV14-07463 BRO-MRW.

**Trial**:  April 6, 2016. Garry Bradley, v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County) Case No. BC473200.

**Trial:**  April 12, 2016.  Jesse Michael Espinoza, v. City of Mesa, et al.  USDC (Arizona) Case No. CV2013-092842.

**Deposition:** April 14, 2016.  The Estate of Anthony Agustin Banta, et al. v. City of Walnut Creek, et al.  USDC Case No. C13-00342 CRB.

**Deposition:** April 18, 2016.  Stephen McCollum et al., v. Texas Department of Criminal Justice, et al.  Case No.3:12-CV-02037.

**Deposition:** April 27, 2016.  Tan Lam v. City of Los Banos, et al.  Case No. 2:15-cv-00531 MCE, KJN

**Deposition:** May 2, 2016.  Edsell Ford, et al. v City of Los Angeles, et al.  USDC Case No. CV14-7268 JFW - MAN.

**Deposition:** May 4, 2016.  Susan Mellen, et al. v. City of Los Angeles, et al., Case No. CV15-03006 GW (AJWx).

**Deposition:** May 10, 2016.  Dennis Mitchell Mueller, v. Deputy Manuel Cruz, County of Orange, et al.  USDC Case No. CV 13-01274 CJC (JCGx).

**Deposition:** May 13, 2016.  Robert Jackson III, v. County of San Bernardino, et al.  USDC Case No. EDCV 13-01650-JGB (DTBx).

**Trial:** May 17, 2016.  Gordon v. Harris County et al.,USDC Case No. 4:14-cv-03463, S.D. of Texas (Houston).

**Deposition:** May 27, 2016.  Oscar Ramirez, Sr. v. County of Los Angeles; Bryan Moreno, et. al.U.S. District Court Case No.:  CV 15-03062 AB (PLAx).

**Deposition:** June 6, 2016.  Brett Lewis, v. Café Club Fais Do Do, et al., Superior Court, State of California  (Los Angeles County), Case No. BC 468234.

**Trial:** June 13, 2016.  Rayven Vinson, et al, v. City of Los Angeles, et al. USDC Case No.: CV 14-4488-PLA.

**Deposition:** June 14, 2016.  Edin S. Castellanos, v. State of California, et al., Case No.: 4:15-cv-00272-JSW.

**Deposition:** June 20, 2016.  Lance McClain, et al, v. City of Eureka, et al. Case No. 3:15-cv-02070 WHO.

**Deposition:** June 21, 2016.  Moises Palacios, Victoria et al., v. City of Los Angeles, et al., Case No.: 14-cv-09639-MJF (AJWx).

**Trial:** June 24, 2016.  Brett Lewis, v. Café Club Fais Do Do, et al., Superior Court, State of

California  (Los Angeles County), Case No. BC 468234.

**Deposition:** June 29, 2016.  Terence Wyatt, v. Gary Colbert, et al., USDC Case No. 5:15-cv-586.

**Deposition:** June 30, 2016.  Sergio Pina v. City of Los Angeles, et al. USDC Case No. 13-CV-04989-FMO-MRW.

**Deposition:** July 8, 2016.  R.R.R., et al. v. City of Banning, et al., USDC Case No. 5:14-cv-01430-CAS-FFM.

**Deposition:** July 13, 2016.  Justin L. Palmer, v. City of Santa Monica, el al., Case No.: 2:15-cv-06183-SJO-JC.

**Trial:** July 14, 2016.  Robert Jackson III, v. County of San Bernardino, et al.  USDC Case No. EDCV 13-01650-JGB (DTBx).

**Trial:** July 18, 2016.  Edin S. Castellanos, v. State of California, et al., Case No.: 4:15-cv-00272-JSW.

**Deposition:** July 21, 2016.  Arthur Scott, v. City of San Diego, et al.  Superior Court, State of California (San Diego County), 37-2015-00001940 CU-OE-CTL.

**Deposition:** July 28, 2016. 1506.  Gladis Herrera, et al. v. City of Ontario, et al.  Case No. 5:15-cv-01370.

**Deposition:** August 1, 2016.  Estate of Andrea Naharro (Barnard), et al., vs. County of Santa Clara, et al., Case No.: 14-04570.

**Trial:** August 3 & 4, 2016.  Dennis Mitchell Mueller, v. Deputy Manuel Cruz, County of Orange, et al.  USDC Case No. CV 13-01274 CJC (JCGx).

**Deposition:** August 5, 2016.  Sarai Urdez Navarro, et al., v. County of Riverside, et al. USDC Case No. ED CV14-01201 GHK (PLAx).

**Trial:** August 11, 2016.  Daniel L. Kloberdanz, v. Joseph M. Arpaio, et al., USDC Case No.: 2:13-cv-02182-PHX-JWS.

**Deposition:** August 17, 2016.  Catherine Smith, et al., v. County of Butte, et al.  USDC Case No. 2:15-CV-00988 GEB-CMK.

**Deposition:** August 25, 2016.  Joshua Osorio, et al. v. State of California (CHP) et al.  Superior Court State of California (San Diego County) Case No. 37-2013-0072536 CU-CR-CTL

**Deposition:** August 26, 2016. J.L.D. (Douchet), et al, v. City of Los Angeles, et al. USDC Case No. CV11-03141 SVW - MAN.

**Trial**: August 29, 2016. People v. Gabrielle Lemos. Superior Court, State of California, Sonoma County Case No. SCR-674200.

**Trial:** August 31, 2016. Justin L. Palmer, v. City of Santa Monica, el al., Case No.: 2:15-cv-06183-SJO-JC.

**Deposition:** September 2, 2016. Maria Teresa Abrego, et al, v. City of Los Angeles, et al. Case No. CV15-00039 BRO (JEMx).

**Trial:** September 9, 2016. 1518. J.L.D. (Douchet), et al, v. City of Los Angeles, et al. Superior Court Case No. CV11-03141 SVW - MAN.

**Trial:** September 15, 2016. The Estate of Anthony Agustin Banta, et al. v. City of Walnut Creek, et al. USDC Case No. C13-00342 CRB.

**Deposition:** October 7, 2016. Teresita Garcia, et al, v. County of Los Angeles, et al. State of California, Superior Court (Los Angeles County), Case No. BC553204.

**Deposition:** October 17, 2016. Robert Zambrano, et al, v. Redondo Beach, et al. State of California, Superior Court (Los Angeles County), Case No. BC566142.

**Deposition:** October 18, 2016. Nyla Moujaes v. San Francisco Police Department Officer David Wasserman and Sergeant Gary Buckner, Case No.: 3:15-cv-03129 DMR.
Client Attorney:

**Deposition:** October 19, 2016. Richard Vos, et al, v. City of Newport Beach, et al., Case No.: 8:15-cv-00768-JCG.

**Deposition:** November 1, 2016 Darren Donald Liess, et al. (Darren) v. City of Los Angeles, et al. Superior Court Case No. BC541691.

**Trial:** November 3, 2016. 1506. Gladis Herrera, et al. v. City of Ontario, et al. Case No. 5:15-cv-01370.

**Deposition:** November 7, 2016. Adolfo Garcia, et al v. William Davidson, et al. Superior Court (San Diego County) Case N0. 37-2014-00021070 CU-CR-CTL.

**Deposition:** November 15, 2016. 1546. Keivon Young v. County of San Bernardino, et al. Case No. 5:15-CV-01102 JGB-SP.

**Trial:** November 17, 2016. Lance McClain, et al, v. City of Eureka, et al. Case No. 3:15-cv-02070 WHO.

**Deposition:** November 21, 2016. Mark Covert, v. City of San Diego, et al, USDC Case No.: 15cv2097 AJB (WVG).

**Trial:** November 23, 2016 and November 28, 2016. Emmanuel Bracy, v. City of Los Angeles, et al. Case No. C13-09350 (JC).

**Trial:** December 1, 2016. Keivon Young v. County of San Bernardino, et al. Case No. 5:15-CV-01102 JGB-SP.

**Trial:** December 2, 2016. Terence Wyatt, v. Gary Colbert, et al., USDC Case No. 5:15-cv-586.

**Trial:** December 8, 2016. People v. George Clayton Maurer II. Superior Court, State of California (Los Angeles County) Case No. 5JB09210.

**Trial:** December 9 & 12, 2016. Darren Donald Liess, et al. (Darren) v. City of Los Angeles, et al. Superior Court, State of California (Los Angeles County) Case No. BC541691.

**Trial:** December 16, 2016. Nyla Moujaes v. San Francisco Police Department Officer David Wasserman and Sergeant Gary Buckner, Case No.: 3:15-cv-03129 DMR.

**Deposition:** December 21, 2016. Anthony T. Baker, v. City of Glendale, et al., Case No.: 2:15-cv-02432-DLR.

**Deposition:** January 3, 2017. Wilmer Deckard and Nicol Deckard, v. City of Anaheim, et al., Superior Court, State of California (Los Angeles County), Case No 30-2015-00819021 CU-CR-CJC

**Deposition:** January 4, 2017. The Estate of Julian Ramirez-Galindo, et al., v. Untied States of America, et al., Case No.: 15-CV-1694 W(NLS).

**Deposition:** January 5, 2017. Karen Fusilier, v. County of San Bernardino. Superior Court, State of California (San Bernardino County), Case No. CIVDS1313206.

**Deposition:** January 11, 2017. I.A. and C.S., et al., vs. City of Emeryville, et al., Case No.: 4:15-cv-04973-DMR.

**Deposition:** January 13, 2017. The Estate of Ashley DiPiazza, et al., v. City of Madison, and Justin Bailey, Gary Pihlaja, and Carey Leerek, Case No.: 16cv060.

**Trial:** January 18, 2017. Arthur Scott, v. City of San Diego, et al. Superior Court, State of

California, (San Diego County).  Case No. 37-2015-00001940 CU-OE-CTL

**Deposition:** January 24, 2017.  William Mears, et al., v. City of Los Angeles, Case No.: CV 15-08441 JAK (AJWx).

**Deposition:** January 27, 2017, Sylvia Perkins, as Personal Representative of the Estate of Bobby Moore, III, Deceased, vs. Joshua Hastings, et al., Case No.: 4:14-CV-310-BSM.

**Deposition:** January 31, 2017.  Ian Medjes v. City of Los Angeles, et al. Case No. CD Cal. 2:14-cv-5377-DDP-RZ.

**Deposition:** February 3, 2017.  S.R. Nehad (Rawshaneehad), et al v. City of San Diego, et al. Case No. 15-cv-1386-WQH-NLS

**Deposition:** February 21, 2017.  Osvaldo Ureta, et al. v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC501051.

**Trial:** February 22, 2017.  Maria Teresa Abrego, et al, v. City of Los Angeles, et al.  Case No. CV15-00039 BRO (JEMx).

**Trial:** February 28, 2017.  1428.  Alice Smithen, v. United States of America (U.S. Marshall), et al.  Case No. CV 09-0414 GW (PJWx).

**Trial:** March 1, 2017.  Wilmer Deckard and Nicol Deckard, v. City of Anaheim, et al., Superior Court, State of California (Los Angeles County), Case No 30-2015-00819021 CU-CR-CJC.

**Trial:** March 6, 2017.  Regarding: Russell Martinez v. Joseph Salazar, et al., D.N.M. Case No. 14-cv-00534 KG/WPL (Albuquerque, NM.)

**Deposition:** March 9, 2017.  Maria Delores Ramirez, v. City of Los Angeles, et. al.  USDC Case No: CV 15-02179 MWF (FFMx).

**Deposition:** March 17, 2017.  Lisa Lopez, et. al., v. County of Los Angeles, et al., USDC Case No.: CV 16-00098-AB-KS

**Deposition:** March 24, 2017.  Monica Ramirez, et al, v. City of Los Angeles, et al.  Superior Court State of California (Los Angeles County), Case No. BC597276.

**Deposition:** March 27, 2017.  Sheronda A. Byrd-Givens, et al, v. Stephen E. Asch, et al., Case No. 2 :16-cv-00410-MHW-KAJ D.

**Trial:** March 28, 2017.  Maria Delores Ramirez, v. City of Los Angeles, et. al.  USDC Case No: CV 15-02179 MWF (FFMx).

**Deposition:** April 3, 2017. Walter Deleon, et al., vs. City of Los Angeles, et al., Case No.: 2:16-cv-03721-FMO-RAO. 1595

**Trial:** April 5, 2017. Joshua Osorio, et al. v. State of California (CHP) et al. Superior Court State of California (San Diego County) Case No. 37-2013-0072536 CU-CR-CTL

**Deposition** April 7, 2017. Channel Centeno, et al., v. City of Fresno, et al., Case No.: 1:16-CV-00653-DAD-SAB.

**Deposition:** April 10, 2017. Allen B. Shay v. County of Los Angeles – Case No. 15-CV-4607 CAS (RAO).

**Deposition:** April 14, 2017. Eliel Paulino, v. Marco Cruz, et al., Case No. CV16-02642-NC.

**Trial:** April 20, 2017. Marius Mitchell v. Neal A. Robertson, Case No.: 2:16.

**Deposition:** April 24, 2017. Mercedes Hernandez, v. Department of Motor Vehicles, et al. Superior Court Case No. BC588742.

**Deposition:** April 26, 2017. Daniel Smith v. City of Anaheim, et al. Case No. SACV15-1776 CJC (DFMx).

**Trial:** April 27 &28, 2017. Ray Webb, v. Officer J. Ackerman, (Long Beach) et al., Case No.: CV013-09112.

**Deposition:** May 8, 2017. Ethan Morse vs. County of Merced, et al., Case No.: 1:16-CV-00142-DAD-SKO.

**Deposition:** May 10, 2017. Dyrone Leake, Sr. v. City of Los Angeles, et al. Superior Court Case No. BC 606819.

**Deposition:** May 22, 2017. Isabel Bel Montez, et al., v. City of Stockton, et al., Case No.: 2:10-cv-03149 MCE FEB.

**Deposition:** May 26, 2017. Antonio Ortiz, Luiz Ortiz, vs. City of Fullerton, et al., Case No.: CV-16-01499 DOC (DFMx).

**Deposition:** May 30, 2017. Estate of Derek Williams Jr., et al., vs. City of Milwaukee, et al., Case No.: 2:16-cv-00869.

**Deposition:** June 5, 2017. Lee Darnell Watson, vs. City of San Jose, et al., Case No.: 3:15-cv-04054.

**Deposition:** June 12, 2017.  Estate of Gustavo Najera, et al. v. City of Anaheim, et al., Case No. 8:16-CV-01243 JLS (JCG).

**Deposition:** June 15, 2017.  Estate of Danny Cecil Jones, et al., vs. City of Spokane, et al., Case No.: 2:16-cv-00325.

**Trial:** June 16 & 19, 2017.  People v. Robert Branch, Superior Court, State of California, (San Diego County) Case No. CD264516.

**Deposition:** June 20 &26, 2017.  Kierra Williamson, Princeton Williamson, and Michael Williamson, vs. Chicago Police Officer Wilfredo Ortiz, et al., Case No.: 14 CV 6397.

**Deposition:** June 27, 2017.  Doyma Vanessa Michel, v. United States of America.  Case No. Case No.16-CV-0277 GBC-RBB.

**Trial:** July 12, 2017.  The Estate of Ashley DiPiazza, et al., v. City of Madison, and Justin Bailey, Gary Pihlaja, and Carey Leerek, Case No.: 16cv060.

**Deposition:** July 21, 2017.  Graciela Lopez Franco, et al, v. United States, et al.  Case No. 15-cv-2626 - JM (RBB).

**Trial:** July 24, 2017.  Maria Del Carmen Rivas, et al., v. City of Los Angeles, et al., Case No.:2:15-CV-000456-JFW-JEM.

**Trial:** July 31, 2017.  People v Amanda Christine Jaramillo.  Superior Court, Orange County, Case CHPW 14-1404

**Deposition:** August 1, 2017.  Randy Conan v. City of Fontana, et. al. Case No. 15:16-cv-01261.

**Trial:** August 4, 2017.  Shirar et al, v. CHP Officer Miguel Guerrero, et al,   USDC Case No. EDCV 13 - 0906 JGB (OPx).

**Deposition:** August 14, 2017.  Breanna Cooke, et al., vs. City of Stockton et al, Case No. 2:14-cv-00908-KJM-KJN.

**Deposition:** August 15, 2017. Marcus Vaughn, et al. v. City of Los Angeles, et al.  Case No. 2:16-cv-03086 AB-AJW.

**Deposition:** August 17, 2017.  Shawna Brown, et al., vs. City of Stockton, et al., Case No. 2:13-CV-01007-KJM-KJN.

**Deposition:** August 21, 2017.  Sandra Salazar, et al., vs. Deputy Shandon Deasey, et al., Case No. 5:16-cv-01103-JFW-KK.

**Deposition:** August 21, 2017.  Sufle v. City of Gardena, et al., Case No. CV 16-00384-GW-MRWx

**Deposition:** August 22, 2017.  Andrew Jeremy Garcia v. City of Garden Grove, et al.  Case No. 8:16-cv-00154 DOC (KESx).

**Trial:** August 28, 2017.  The Estate of Angel Lopez, et al., v. City of San Diego, et al.  Case No.: 13CV2240 GPC BGS.

**Deposition:** September 7, 2017.  Arthur Moore, et al, v. City of Berkeley et al, Case No.: 14-cv-000669 CRB.

**Deposition:** September 8, 2017.  Estate of Ruben Nunez, et al v. County of San Diego, et al., Case 3:16-cv-01412-BEN-MDD.

**Trial.**  September 11, & 12, 2017.  Kierra Williamson, Princeton Williamson, and Michael Williamson, vs. Chicago Police Officer Wilfredo Ortiz, et al., Case No.: 14 CV 6397.

**Trial.**  September 15, & 18, 2017.  Lee Darnell Watson, vs. City of San Jose, et al., Case No.: 3:15-cv-04054.

**Deposition:**  September 20, 2017.  Aubrey Williams vs. City of Birmingham, et al., Case No.: 2:16-cv-00650-JEO.

**Deposition:**  September 25, 2017, Douglas Cruse and Iveta Cruse, v. Jacob Emory Swigger, and Signal Hill Police Department, et al.  Superior Court (Los Angeles County) Case No. BC602211.

**Deposition:**  September 27, 2017.  Lastenia Marizol Rodriguez, vs. City of Fontana, et al., Case No. 5:16-cv-01903 JGB-KK.

**Deposition:**  September 28, 2017.  Herbert O. Allen v. City of Santa Monica, et al, USDC Case No. 2:11-cv-10139 R-GJS

**Trial:**  October 5, 2017.  Graciela Herrera, et. al., v. City of Los Angeles, et al., USDC Case No.:2:16-cv-02719-DSF-SK.

**Deposition:**  October 9, 2017.  Dionne Smith-Downs, et al v. City of Stockton, et al.  Case No. 2:10-cv-02495 MCE-GGH.

**Deposition:**  October 12, 2017.  Evangelina Gonzalez and Victor Gonzalez vs. County of Los Angeles, Deputies Adrian Dominguez, Steven Velasquez, et al., Case No.: 2:16-cv-07018

**Deposition:**  October 13, 2017, & December 15, 2017.  Felipe Navarro, et al., vs. State of New

Mexico, et al., Case No.: 2:16-cv-01180 MCA/CG.

**Trial:**  October 17, 2017.  Mayumi Donaldson, et al. v. Deputy U.S. Marshal Michael Hall, et al. Case No. 3:15-cv-00908 BAS-KSC.

**Deposition:**  October 19, 2017.  Giselle Genesis Lopez, et al v. City of Inglewood, et al. Superior Court (Los Angles County) Case No. Case No. BC563203.

**Trial.**  October 25, 2017.Randy Conan v. City of Fontana, et. al. Case No. 15:16-cv-01261.

**Trial.**  October 27, 2017.  Estate of Manuel Diaz, Genevieve Huizar, v. City of Anaheim, et al. USDC Case No. 12-01897 JVS (RNBx).

**Trial.**  November 7, 2017.  William Mears, et al., v. City of Los Angeles, Case No.: CV 15-08441 JAK (AJWx).

**Trial:**  November 15, 2017.  Shellabarger et al, v. Dicharry et al, Case No. 13-cv-00188-TLN-CMK.

**Deposition:**  November 21, Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No., 16-cv-06073-TJH-MRW

**Deposition:** November 27, 2017.  Monica Ortiz, et al. v. City of Rialto, et al., Case No. 5:16-cv-01384-JGB. (KSx).

**Deposition:**  December 1, 2017.  C.R. Co-Successor-in-Interest to Decedent Rakeem Rucks, et al., vs. City of Antioch, et al., Case No.: C16-03742 JST.

**Trial:**  December 8, 2017, Sammy Sanchez, et al v. City of Tucson, et al.  USDC Case No. 72-1576857.

**Deposition:**  December 11, 2017.  Estate of Roshad McIntosh, v. City of Chicago, et al. USDC Case No. 1:15-cv-01920

**Deposition:**  December 14, 2017.  Taylor Swift vs. David Woo, Vera Hicks, et al.  USDC Case No.: 3:17-cv-00866-VC.

**Deposition:**  December 18, 2017.  Domingo Davis, Jr., vs. City of Santa Clara and Cuong Phan, Case No. 5:15-CV-05603-EJD.

**Deposition:**  December 27, 2017.  Estate of Pierre Loury v. City of Chicago, et al.  USDC Case No. 1:16-C-04452.

**Trial:** January 11, 2018.  Giselle Genesis Lopez, et al v. City of Inglewood, et al. Superior Court (Los Angles County) Case No. Case No. BC563203.

**Deposition:** January 12, 2018.  Filiberto Valencia, Sr., et al., vs. City of Stockton, et al., Case No.: 2:16-cv-02081-JAM-AC.

**Deposition:** January 16, 2018.  Edmon Washington v. City of Los Angeles, et al., Case No. 2:17-02829-PA (FFMx)

**Deposition:** January 22, 2018.  Shainie Lindsey, et al., vs. City of Pasadena, et al., Case No.: CV 16-8602 SJO (RAOx).

**Trial:** January 24, 2018.  Penelope Armstrong, v. County of Los Angeles, et al., Superior Court Case No.:BC528453

**Deposition:** January 30, 2018.  Joe Robles and Elvira Robles vs. Aransas County, Texas: Matthew Campbell Individually, Civil Action No.: 2:15.

**Trial:** February 1, 2018.  S.B. a minor, et al (Brown), v. County of San Diego, et al., Case No. 14CV0072, JAH KSC.

**Deposition:** February 1, 2018.. Jenny Tucker, et al., v. The County of Riverside, et al., Case No.: 5:16-CV-02275-JGB (DTBx).

**Trial:** February 7, 2018.  People v. Gilberto Fajardo.  Superior Court, State of California, (Kern County). Case No. BF160536A

**Deposition:** February 8, 2018.  Archibald et al. v. County of San Bernardino et al. USDC Case No. CV 16-01128 AB (SPx). Mr. Dale K. Galipo

**Deposition:** February 12, 2018.  Estate of Johnny Martinez, et al. v. County of Los Angeles, et al., Superior Court, State of California, (Los Angeles County), Case No. BC579140 MPL (Dept 34).

**Deposition:** February 14, 2018.  Maria Hernandez; A.J., Jr., et al, . City of Los Angeles, et al Case No. 2:16-c-02689 AB (JEMx).

**Deposition:** February 15, 2018.  Marc Alan Corbin, v. County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. BC 512036

**Trial:** February 22, 2018.  Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al. Case No. 2:16-c-02689 AB (JEMx).

**Deposition:** February 23, 2018.  Robert Ayala, vs. Aransas County, Texas and Anthony Ciarletta, In The United States District Court For The Southern District of Texas Corpus Christi Division, Case No. 1:15

**Hearing:** March 7, 2018.  People v. Michael David Suyssman, Superior Court, State of California (Los Angeles County), Case No. M232634DV.

**Trial:** March 13, 2018:  April 10, 2014.  Chien Van Bui, et al, vs. City and County of San Francisco, et al.  USDC Case No. CV 11-04189 LB.

**Deposition:** March 19, 2018.  Kevin Foy vs. Pulaski County, Arkansas, Austin Callahan, et al., Case No.: 4:17-cv-358-BSM.

**Deposition:** March 23, 2018.  Anthony Wilson, et al., vs. City of Douglasville, GA, et al.., Case No.: 1:17-cv-00634-ELR.

**Trial:** March 26, 2018.  Adolfo Garcia, et al v. William Davidson, et al.  Superior Court (San Diego County) Case N0. 37-2014-00021070 CU-CR-CTL.

**Deposition:** March 27, 2018.  Jane Doe vs. County of Fresno, et al.  Superior Court State of California, (Fresno County) Case No. 16CECG03273

**Deposition:** March 28, 2018.  Phillip Murry v. North Las Vegas Police Department, etal. Case No.: 2:17-cv-00157-APG-CWH.

**Deposition:** April 5, 2018.  Alma Ramirez, et al, v. City of Gilroy, et al.  Case No. 5:17-cv-00625 HRL

**Deposition:** April 12, 2018.  Melane Jackson v. City of Los Angeles, et al., Superior Court, State of California (Los Angeles County) Case No. BC609513.

**Deposition:** April 17, 2018.1701.  Leticia Solis, et al, v. City of City of Los Angeles, et al.  Case No. 2:17-cv-02352, AB-PJW

**Deposition:** April 19, 2018.  Jesse Sanchez, v. City of Stockton, et al.  Superior Court State of California (San Joaquin County), Case No. CV-2015-0006499.

**Trial:** April 20, 2018.  Ethan Morse vs. County of Merced, et al., Case No.: 1:16-CV-00142-DAD-SKO

**Deposition:** April 26, 2018.  Marco A. Figueroa vs. City of Casa Grande, et al., Case No: 2: 16-CV-03275-ROS

**Deposition:**  April 27, 2018.  Tanya A., et al., v. City of San Diego, et al.,  Case No.: 3:14-cv-01942-L-RBB, and Jane Doe, v. City of San Diego, et al.  Case No.  14cv1941-L-AGS.

**Trial:** April 30, 2018. Melane Jackson v. City of Los Angeles, et al., Superior Court, State of California (Los Angeles County) Case No. BC609513.

**Trial:** May 1, 2018.  Estate of Gustavo Najera, et al. v. City of Anaheim, et al., Case No. 8:16-CV-01243 JLS (JCG).

**Trial:** May 3, 2018.  Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No., 16-cv-06073-TJH-MRW.

**Deposition:**  May 8, 2018.  Amber Wallisa, v. City of Hesperia, et al., Case No.: 5:16-cv-2638.

**Trial:**  May 10, 2018.  The People of the State of California v. Michael David Sussman.  Case No. M232634DV.

**Deposition:**  May 11, 2018.  Rosamanda Flores vs. The City of Concord, et al., Case No.: 4:15-cv-05244-PJH, and Rosamanda Flores vs. The City of Concord, et al., Case No.: 4:17-cv-05810-PJH (Combined by the Court).

**Deposition:**  May 18, 2018.  Estrella Lysandra Zayas vs. State of California, et al., Case No.: 3:17-CV-02739-EMC.

**Deposition:**  May 22, 2018.  Denise Garcia vs. Harris County, Texas, et al., Case No.: 4:16-cv-2134.

**Trial:**  May 24, 2018.  Graciela Lopez Franco, et al, v. United States, et al.  Case No. 15-cv-2626 - JM (RBB).

**Deposition:**  May 29, 2018.  Royce Belcher vs. Williamson County, Texas Deputy Jeremy Ellison, individually, and Deputy Gauna, Individually, Case No.: 1:17-cv-00153-SS.

**Deposition:**  June 4, 2018.  Cynthia Briones, et al., v. City of Ontario et al., Case No.: 5:17-cv-00590-DMG-JPR.

**Deposition:**  June 5, 2018.  E.H., (Martin Hurtado deceased) et al. v. City of Long Beach, et al. Case No. 2:16-v-09641-SJO (KSx).

**Deposition:**  June 6, 2018.  R.J. v. City of Los Angeles, et al., Case No. 2:16-CV-07232 CBM (Skx).

**Deposition**:  June 11, 2018.  Chandra Jacquez individually, and as successor-in-interest to

Richard Jacquez (deceased), v. City of San Jose, et al.  Case No. 5:16-CV-5343. NC.

**Deposition:**  June 12, 2018.  Kelly Carter vs. County of Alameda, et al., Case No.: 3:16-cv-05132-WHO.

**Trial:**  June 14, 2018. Leticia Solis, et al, v. City of City of Los Angeles, et al. Case No. 2:17-cv-02352, AB-PJW

**Trial:**  June 14, 2018, Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS.

**Trial**:  June 19, 2018. Floyde Armbrester, v. City of Berkeley et al. Case No. 3:16-cv-04615.

**Deposition:**  June 20, 2018. Ashley Lauren Watts vs. City of Newport Beach, Christine Maroney, Monica Aguilar, et al., Case No.: 8:17-cv-01099-AG (Skx).

**Deposition:**  June 25, 2018. Matthew Francois, v. The City of San Diego, et al. Superior Court, State of California (San Diego County), Case No. 37-2016-00003251.

**Deposition:**  July 12, 2018. Maurice Lallemand v. County of Los Angeles, et al., Case No. CV17-00781 JAK (SS)

**Trial:** July 19, 2018. Matthew Francois, v. The City of San Diego, et al. Superior Court, State of California (San Diego County), Case No. 37-2016-00003251, CU-OB-CTL.

**Deposition:**  July 24, 2018.  Cesar Cuellar, Sr. et al. v. City of Laredo (Texas), et al. USDC Case No. 5:17-cv-00076.

**Trial**:  July 26, 2018. Jesse Sanchez, v. City of Stockton, et al. Superior Court State of California (San Joaquin County), Case No. CV-2015-0006499.

**Trial:**  August 7, 2018. Tan Lam v. City of Los Banos, et al.  Case No. 2:15-cv-00531 MCE, KJN.

**Deposition:**  August 8, 2018.  Dane Zeen, v. County of Sonoma, et al, Case No. Case No:  3:17-cv-02056-LB

**Deposition:** August 9, 2018.  Aram Tagmazyan, Angela Tagmazyan, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC561908.

**Deposition** August 13, 2018.  Marina Borawick, v. City of Los Angeles, et al. Case No. 2:17-cv-02036 BRO-JC

**Trial:** August 20, 2018. Dane Zeen, v. County of Sonoma, et al, Case No. Case No: 3:17-cv-02056-LB.

**Trial:** August 24, 2018. Gina Best and Shaun Lowrance, et al., vs. Virginia Beach Police Officers Ferreira, Roys, Thorson, and Ziemer, Case No.: CL17-1137.

**Trial:** August 29, 2018. People v, Jon Luthuli Larson, Superior Court State of California (Napa County), Case No. CR

**Deposition:** August 30, 2018. Wilson Ramos, As Administrator of the Estate of Jose A. Maldonado, v. Town of East Hartford, et al. Case No. 3:16-cv-00166 VLB

**Deposition:** September 5, 2018. Teresa Dominguez, et al, vs. City of Los Angeles, et al. Case No.: CV 17-04557 DMG (PLAx).

**Trial:** September 6, 2018. Chandra Jacquez individually, and as successor-in-interest to Richard Jacquez (deceased), v. City of San Jose, et al. Case No. 5:16-CV-5343. NC.

**Deposition:** September 7, 2018. Teresa Todero, as Special Administrator of the Estate of Charles Todero vs. City of Greenwood, Brian Blackwell, Renee Elliott, and Elizabeth Laut, Case No. 1:17-cv-01698-TWP-MJD.

**Deposition:** September 14, 2018. David P. Demarest vs. The City of Vallejo, et al. Case No.: 2:16-cv-0227-GEB-KJN.

**Deposition:** September 21, 2018. Taina Rozier, et al (Okwera Olango, deceased), v. City of El Cajon, et al. USDC Case No. 17-cv-347-BAS-NLS, and Case No. 3:17-cv-00089 BAS-NLS, and Lucy Olango, v. City of El Cajon, et al., Superior Court Case No. 37-2017-00005331 CU-PO-CTL

**Deposition:** October 9, 2018. Joseph Earl Wheeler vs. Graves County Kentucky and Graves County Sheriff's Department and Dewayne Redmon, et al., Case No.: 5:17-cv-38-TBR.

**Deposition:** October 11, 2018. Jimmy Brooks vs. City of Vallejo, et al., Case No.: 2:16-cv-02376-WBS - EFB.

**Trial:** October 19, 2018 and October 23, 2018. People v. Steve Rodriguez, San Bernardino Case No: MWV1507990.

**Trial:** October 31, 2018 and November 1, 2018, Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS.

**Trial:** November 2, 2018. Jenny Tucker, et al., v. The County of Riverside, et al., Case No.:

5:16-CV-02275-JGB (DTBx).

**Deposition:** November 6, 2018.  Ramon Cortesluna, v. City of Union City Police Officer Manuel Leon, et al, Case No.: 3:17-cv-05133-JSC.

**Deposition:** November 7, 2018.  Estate of Kevin Matthews, et al., vs. City of Dearborn (Michigan), et al.  Case No. 2:16-cv-13763 GCS-SDD

**Deposition:** November 8, 2018.  D.F., M.F., A.F., N.F., (Minors), Panfilo Flores, and Yolanda Flores, v. City of Anaheim, et al. Case No. 8:17-cv-01194 AG-JCG.

**Trial:**  November 14, 2018:  Estrella Lysandra Zayas vs. State of California, et al., Case No.: 3:17-CV-02739-EMC.

**Trial:**  November 15, 2018.  Teresa Dominguez, et al, vs. City of Los Angeles, et al. Case No.: CV 17-04557 DMG (PLAx).

**Deposition:** November 16, 2018.  Roy Nelson III, Successor-in-Interest to Decedent Roy Nelson; Orenell Stevens, Individually, v. City of Hayward, et al. USDC Case No. 3:16-cv-7222

**Deposition:** November 20, 2018.  Neftali Monzon, et al. v. City of Murrieta, et al.  Case No. 2:17-cv-01371 ODW (Skx)

**Deposition:** November 21, 2018.  Leticia Barron vs. State of California, Case No.: 8:17-cv-01275-JVS-KES.

**Deposition:** November 27, 2018.  Estate of Juan Manuel Avila, JR., et al.  v. City of Long Beach, et al. Case No. 2:17-CV-05067 AB JPR.

**Deposition:** November 29, 2018.  Chris Mathis, v. Nicholas Stevens and Edward Black.  USDC (Texas) Case No. 3:17-cv-1835-S.

**Deposition:** November 30, 2018.  Trinidad Brown vs. Eddie Diaz, Eric Howard, Laertis Moraitis, and Daniel Villalobos, Case No.: 2:17-cv-01157-KJM-AC.

**Trial:**  December 3, 2018 and December 4, 2018.  Donna Lancaster, v. Kansas City Board of Police Commissioners, et al., Case No.:4:14-cv-00171-SOW.

**Deposition:** December 5, 2018.  Ryan M. Larson vs. John L. Sander, et al., Case No.: 0:17-cv-00063.

**Deposition:** December 11, 2018.  Leslie A. Merritt, Jr. vs. State of Arizona, et al.,  United States District Court, District of Arizona, Case No. CV17-4540-PHX-DGC

**Trial:** December 13, 2018. Leticia Barron vs. State of California, Case No.: 8:17-cv-01275-JVS-KES.

**Deposition:** December 14, 2018. Estate of Joseph Valverde (Isabelle Padilla), et al, v. Justin Dodge, and the City and County of Denver, Colorado, Case No. 1:16-cv-01703 MSK-KMT.

**Trial:** December 19, 2018. People v. Anthony J. McGaff. Superior Court, San Diago County, California, Case No. SCE379648, DA NO. MBQ014.

**Trial:** January 17, 2019. L. Alicia Rascon, individually, et al., vs. Clinton H. Brookins, et al. Case No.: 2:14-cv-00749-PHX-JJT.

**Deposition:** January 30, 2019.. Xaime Casillas v. City of Los Angeles, et al. USDC Case No. 2:16-cv-09606-TJH-GJS

**Deposition:** January 31, 2019. Tony Nunez, et al. v. City of San Jose, et al. Case No. 17-cv-03860 LHK.

**Deposition:** February 4, 2019, Kathryn Green (individually and as a representative of the Estate of Patrick Green, Deceased), David Green, vs. Harris County, Texas, Former Harris County Sheriff, et al., Case No.: 4:16-cv-00893.

**Deposition:** February 6, 2019. Sofia Valenzuela (Jose Romero), et al, v. City of Long Beach, et al. Superior Court Case No. BC672993.

**Deposition:** February 7, 2019. Rubia Rosaura Serna, et al. v. City of Bakersfield and Reagan Selman U.S. Dist. Court, Eastern District of CA - Case No. 1:17-CV-01290-LJO-JLT.

**Deposition:** February 11, 2019. Annice Evans (aka Ramos), et al. v. City of Vallejo, et al. Case No: 2:17-cv-01619-TLN-AC.

**Depositoin:** February 15, 2019 L.M., et al., vs. City of Redding, et al., Case No.: 2:14-CV-00767 MCE-AC.

**Trial:** February 20, 2019. Akrem Azzam vs. City of Houston, Texas, et al., Case No.: 4:17-cv-1242.

**Trial:** February 22, 2019. Moises Palacios, Victoria et al., v. City of Los Angeles, et al., Case No.: 14-cv-09639-MJF (AJWx).

**Trial:** February 27, 2019. Russell Tenorio v. Brian Pitzer, et al., Case No.: 2012-CV-01295 LH/KBM.

**Trial:**  March 4, 2019.  Sofia Valenzuela (Jose Romero), et al, v. City of Long Beach, et al. Superior Court Case No. BC672993.

**Deposition:**  March 5, 2019.  Puente, an Arizona Nonprofit Corporation, et al, v. City of Phoenix, et al., Case No. 2:18-cv-02778-JJT.

**Deposition:**  March 8, 2019.  Lawrence, et al. v. Las Vegas Metropolitan Police Department, et al. (USDC Case No. 2:16-cv-03039-JCM-NJK)

**Deposition:**  March 12, 2019.  Estate of Omar Gonzalez, et al. vs . City of Los Angeles, Officer Eden Medina, et al., Case No.: BC660356.

**Deposition:**  March 14, 2019.  Jasmin Salcido, et al., vs. City of Whittier, et al., Case No.: 2:17-cv-8819-CBM (Asx).

**Deposition:**  March 19, 2019.  L.F., a minor, by and through Danisha Brown, and K.F., a minor, by and through Danisha Brown, vs. City of Stockton, et al.  Case No.: 2:17-cv-01648-KJM-DB.

**Deposition:**  March 25, 2019.  Kevin DeCarlo, et al. v. City of Vallejo, et al. Case No. 4:18-cv-00109 JSW.

**Deposition:**  April 5, 2019.  Jacob Gorsky, and Olesya Gorsky, v. Harris County, Texas, et al. Case No; 4:16-cv-2877

**Trial:**  April 11, 2019, &April 12, 2019.  Estate of Omar Gonzalez, et al. vs . City of Los Angeles, Officer Eden Medina, et al., Case No.: BC660356.

**Trial:**  April 15, 2019.  The State of Arizona vs. John David Rothrock, Case No.: CR2016-137374-001.

**Deposition:** April 1, 2019.  Estate of Mark Roshawn Adkins, et al. v. County of San Diego, et al. Case No 18-cv-0371-H-MDD.

**Deposition:**  May 8, 2019.  M.J.L.H. (Hurtado), et al, v. City of Pasadena, et al.  Case No.: 2:18-cv-03249 JFW (SSx)

**Deposition:**  May 20, 2019.  Jayd Schroeder, v. Rialto Police Department.  Case No. 5:18-cv-00427 SP.

**Deposition:**  May 30, 2019 Mary H. Garcia, individually and successor-in-interest to Estate of Phillip Soto Garcia Jr., et al., vs. Sergeant Ayala; et al., Case No.: 5:15-cv-839- SJO (Asx).

**Trial:**  June 5, 2019.  Schroeder, Jayd v. Wright, Steven and Parcher, Nicholas, Case No. 5:18-cv-00427-SP.

**Deposition:**  June 10, 2019.  Jason Anderson, v. City of Vallejo, et al. Case No. 2:17-cv-00137-JAMDB.

**Trial:**  June 24, 2019.  Tony Nunez, et al. v. City of San Jose, et al.  Case No. 17-cv-03860 LHK.

# EXHIBIT D

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public:  (916) 445-9555
Telephone:  (916) 210-7342
Facsimile:  (916) 324-5205
E-Mail:  David.Goodwin@doj.ca.gov

August 13, 2019

**_Via U.S. and Electronic Mail_**

Kevin S. Conlogue
Law Offices of Kevin S. Conlogue
292 S. La Cienega Blvd., Ste. 207
Beverly Hills, CA 90211

Gabriel H. Avina
Law Offices of Gabriel H. Avina
3781 Cimarron Street
Los Angeles, CA 90018

RE:     *Sim v. Duran, et al.*
        U.S. District Court, Eastern District of California, Case No. 1:16-cv-01051 SAB (PC)

Dear Mr. Conlogue:

        This letter serves as Defendant Duran's attempt to meet and confer regarding anticipated
evidentiary issues at trial.  Please confirm whether you oppose our position on the following
issues.

        **1.      Evidence concerning dismissed claims against Dr. Patel and Dr. Johal.**

        The pretrial order lists Dr. Patel and Dr. Johal as potential witnesses.  (ECF No. 72 at 8.)
It also lists their deposition testimony and responses to written discovery as potential evidence.
(*Id.* at 14, 17-18.)

        While Dr. Patel and Dr. Johal's medical treatment provided to Mr. Sim may be relevant,
any evidence that they were parties to this lawsuit, that Mr. Sim claimed they violated the Eighth
Amendment by acting deliberately indifferent to his serious medical needs, or that Mr. Sim
litigated those claims against them, is not relevant to the claim against Duran.  Fed. R. Evid. 401.
To the extent the evidence is relevant, its probative value is substantially outweighed by danger
of confusing the issues and wasting time.  Fed. R. Evid. 403.  Evidence therefore should not be
presented regarding dismissed claims against Dr. Patel and Dr. Johal.

August 13, 2019
Page 2

      **2.**      **Evidence that Duran violated any section of the California Penal Code.**

      The joint pretrial statement states, "Defendant committed an assault under color of law pursuant to California Penal Code section 149, and criminal assault with a deadly weapon under California Penal Code section 245." (ECF No. 71 at 4.)  The expert report of Roger Clark also refers to these Penal Code sections.  (Clark Rep. at p. 13.)

      This case is proceeding on a civil claim for damages under the Eighth Amendment.  This is not a criminal trial.  Evidence that Duran did or did not violate any section of the Penal Code is not relevant.  Fed. R. Evid. 401.  To the extent it is relevant, its probative value is substantially outweighed by danger of confusing the issues and wasting time.  Fed. R. Evid. 403.  Evidence therefore should not be presented regarding whether Duran violated any section of the Penal Code.

      **3.**      **Opinion testimony from Mr. Sim regarding his own medical records or medical conditions.**

      If Mr. Sim testifies, he may testify to that which he has personal knowledge, including his own mental and physical condition.  Fed. R. Evid. 701.  However, Mr. Sim is not qualified to testify as to any medical diagnosis, opinions, prognosis, or the medical causation of any condition.  Fed. R. Evid. 702.  Evidence therefore should not be presented by Mr. Sim as to any medical diagnosis, opinions, prognosis, or the medical causation of any condition.

      **4.**      **Evidence regarding Duran's involvement, if any, in other lawsuits, claims, or incidents alleging misconduct.**

      This case is proceeding on a claim regarding an isolated incident occurring on August 31, 2014.  Evidence regarding Duran's involvement, if any, in other lawsuits, claims, or incidents alleging misconduct is not relevant as to whether she used excessive force on Mr. Sim on August 31, 2014.  Fed. R. Evid. 401.  To the extent it is relevant, its probative value is substantially outweighed by danger of confusing the issues, misleading the jury, and wasting time.  Moreover, Duran's involvement, if any, in other lawsuits, claims, or incidents alleging misconduct is prohibited character evidence.  Fed. R. Evid. 404.  Evidence therefore should not be presented regarding Duran's involvement, if any, in other lawsuits, claims, or incidents alleging misconduct.

      **5.**      **Evidence that the State may pay the judgment or reimburse Duran in the event a judgment is entered against her.**

      Evidence of insurance or other indemnification is not admissible unless indemnification is a material issue in the case.  *See Larez v. Holcomb*, 16 F.3d 1513, 1518-19 (9th Cir. 1994).  There is no logical basis for distinguishing between indemnification by a private insurer and indemnification by a state or one of its departments.  Evidence therefore should not be presented regarding Duran's potential indemnification or reimbursement by the State.

August 13, 2019
Page 3

**6.      Evidence that Mr. Sim has been convicted of a felony or crime of dishonesty**.

As stated in my other correspondence dated August 13, 2019, we intend to introduce evidence of Mr. Sim's felony convictions for possession of a deadly weapon and armed robbery. These convictions are admissible under Federal Rule of Civil Procedure 609(a)(1)(A).  However, we intend only to introduce the fact that Mr. Sim has these prior felony convictions, their general nature, and the punishment of felony range.  *See U.S. v. Osazuwa*, 546 F.3d 1169, 1175 (9th Cir. 2009) ("Generally, only the prior conviction, its general nature, and punishment of felony range are fair game for testing the [witness's] credibility.").  We do not intend to introduce evidence relating to the details of these convictions unless Mr. Sim denies that he was convicted of those crimes.

We also intend to introduce evidence of Mr. Sim's conviction for false representation of identity to a peace officer.  A witness's character for truthfulness can be attacked by evidence of a criminal conviction for a crime that required proving, or witness's admitting, a dishonest act or false statement.  Fed. R. Evid. 609(a)(2).  Specific instances of conduct may also be permitted on cross-examination if they are probative of the witness's character for untruthfulness.  Fed. R. Evid. 608(b).  Mr. Sim pled guilty to providing false identity to a police officer.  This is a crime of dishonesty and is therefore admissible as impeachment evidence.

We will evaluate further motions in limine concerning expert witnesses after their depositions have been taken.  In the meantime, please inform us in writing whether you disagree with our positions on the evidentiary issues discussed above by the close of business on **August 20, 2019**.

Sincerely,

*/s/ David C. Goodwin*

DAVID C. GOODWIN
Deputy Attorney General

For      XAVIER BECERRA
Attorney General

SA2017304856
13996614.docx

# EXHIBIT E

# THE LAW OFFICE OF
# KEVIN S. CONLOGUE

292 S. La Cienega Blvd., Ste. 207
Beverly Hills, California 90211
www.LACivilRightsLawyer.com

Tel.: (213) 255-8837
Fax: (213) 477-2069
LACivilRightsLawyer@gmail.com

August 16, 2019

**Via U.S. Mail & Facsimile:**
David C. Goodwin, Esq.
1300 I Street, Ste. 125
P.O. Box 944255
Sacramento, CA 94244
Fax No.: (916) 324-5205

      RE:        **Sim v. Duran, et al.**
                   Case No. 1:16-cv-01051-SAB

To Mr. Goodwin:

      Please find this letter in response to your letter dated August 13, 2019, regarding Defendant's motions in limine.

      With the dismissed claims against Dr. Patel and Dr. Johal, Plaintiff will not make an assertion to the jury that claims against them were dismissed. However, their deposition testimony and responses to discovery may still be used at trial as needed.

      With evidence that the State may pay the judgment, Plaintiff does not seek to introduce such evidence. But, Plaintiff cannot stipulate to Defendant's motion in limine as evidence at trial might make this evidence relevant.

      As for the other motion in limines Defendant intends to file, Plaintiff will oppose them as they are overbroad and generalized to the issues presented in this case. These motions in limine are typically filed by the State of California (CDCR) and are overbroad in what is sought to be excluded. As such, Plaintiff will file oppositions to said motions.

      Should you have any questions about the foregoing, please inform my office.

Very truly yours,

KEVIN S. CONLOGUE

# EXHIBIT F

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public:  (916) 445-9555
Telephone:  (916) 210-7342
Facsimile:  (916) 324-5205
E-Mail:  David.Goodwin@doj.ca.gov

August 26, 2019

**_Via U.S. and Electronic Mail_**

Kevin S. Conlogue
Law Offices of Kevin S. Conlogue
292 S. La Cienega Blvd., Ste. 207
Beverly Hills, CA 90211

Gabriel H. Avina
Law Offices of Gabriel H. Avina
3781 Cimarron Street
Los Angeles, CA 90018

RE:     *Sim v. Duran, et al.*
        U.S. District Court, Eastern District of California, Case No. 1:16-cv-01051 SAB (PC)

Dear Mr. Conlogue:

    This letter serves as Defendant Duran's attempt to meet and confer regarding anticipated
evidentiary issues concerning your expert witnesses at trial.  Please confirm whether you oppose
our position on the following issues:

    **1.     Bijan Zardouz, M.D.**

    As discussed in my correspondence dated August 13, 2019, the claims against Dr. Patel
and Dr. Johal for medical deliberate indifference have been dismissed.  Any opinion from Dr.
Zardouz that these physicians provided inadequate medical care is not relevant to the claim
against Duran.  Fed. R. Evid. 401.  To the extent the evidence is relevant, its probative value is
substantially outweighed by danger of confusing the issues and wasting time.  Fed. R. Evid. 403.
Dr. Zardouz therefore should not present opinions regarding dismissed claims against Dr. Patel
and Dr. Johal.

    Dr. Zardouz's report states that, "At this time, I recommend that the patient undergo a
longer EEG recording, either as an inpatient or an outpatient, to find out of there are any
abnormal brain discharges.  If so, then the patient will need to be treated."  (Zardouz Report 21.)
Any opinion concerning abnormal brain discharges or need for treatment is speculative and
should be excluded because it will not help the jury to understand the evidence or determine any
issue of fact.

August 26, 2019
Page 2

Dr. Zardouz's addendum further discusses that a small percentage of patients with symptoms like Mr. Sim have a chance at developing neurological issues in the future, and a small percentage of patients develop seizures and/or memory issues.  Nothing in the record suggests that Sim has a current diagnosis for a neurological deficiency, or that there is a reasonable medical certainty that he suffers from an ongoing neurological deficiency.  Dr. Zardouz's opinion regarding what may be possible in the future, without more, should be excluded because it will not help the jury to understand the evidence or determine any issue of fact.

Finally, Duran will move to exclude Dr. Zardouz's testimony on any subject outside of his report.

2.    **Roger Clark**

Clark was disclosed as an expert witness regarding the use of force.  In his report, Clark renders medical opinions, such as "It is important to note that seizures, nausea, vomiting, and migraines, all of which Mr. Sim continues to experience, appear consistent with blows or kicks to Mr. Sim's head." (Clark Report 10.)  Clark also states that Duran ". . . caused him serious mental and physical pain." (*Id.* at 13.)  Clark is not qualified to render expert medical opinions and any such opinion should be excluded.

Clark's opinions regarding the Penn Arms 40MM launcher and the XM1006 exact impact round are unreliable.  Clark has no specialized knowledge of the Penn Arms 40MM launcher or the XM1006 exact impact round.  His report fails to provide any discussion of these items, their characteristics, or how they are used in an operational setting.  Clark's conjecture that Duran should have had no difficulty hitting the assailants is also both vague and unsupported.  Any opinion regarding the Penn Arms 40MM launcher or the XM1006 exact impact round should be excluded.

In his report, Clark makes numerous statements and opinions that certain actions violate the law or the Constitution.  As a rule, "an expert witness cannot give an opinion as to [a] legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).  Any opinion that Duran's actions violated the law or the Constitution should be excluded.

Clark also makes numerous credibility determinations throughout his report.  For example, on pages 12 and 13, Clark states several times that Duran prevaricated in her testimony. Clark similarly speculated in his deposition about a so-called "Code of Silence."  However, credibility determinations are for the province of the jury.  Clark's statements and opinions that Duran prevaricated, lied, or was otherwise untruthful should be excluded.

Related to the credibility determinations are Clark's numerous opinions regarding Duran's subjective knowledge.  For example, on pages 12 and 13, Clark states that "Duran

August 26, 2019
Page 3

deliberately took sight of Mr. Sim." It is inappropriate for an expert to attempt to intuit a party's subjective knowledge or create a question of fact as to what the party actually knew. Clark's statements and opinions bearing on Duran's subjective intent should be excluded.

Finally, Duran will move to exclude Clark's testimony on any subject outside of his report.

Given the timing of the depositions, and the upcoming deadline to file motions in limine, please inform us in writing whether you disagree with our positions on the evidentiary issues discussed above by **noon** on **August 28, 2019**.

Sincerely,

*/s/ David C. Goodwin*

DAVID C. GOODWIN
Deputy Attorney General

For     XAVIER BECERRA
Attorney General

SA2017304856
Corr Re MIL for Pl Expert Witness.docx

# EXHIBIT G

**David Goodwin**

| | |
|---|---|
| **From:** | Kevin Conlogue <lacivilrightslawyer@gmail.com> |
| **Sent:** | Monday, August 26, 2019 6:09 PM |
| **To:** | David Goodwin |
| **Cc:** | Gabriel Avina |
| **Subject:** | Re: Sim v. Duran - Motions in Limine Re: Expert Witnesses |

**ProfiledItem:** true

Hi David,
We disagree with your positions in your letter with today's date regarding motion in limines on experts.

thanks,

Kevin S. Conlogue, Esq.
**LAW OFFICE OF KEVIN S. CONLOGUE**
292 S. La Cienega Blvd., Ste. 207
Beverly Hills, CA 90211
Tel: (213) 255-8837
Fax: (213) 477-2069
www.LACivilRightsLawyer.com

On Mon, Aug 26, 2019 at 4:33 PM David Goodwin <David.Goodwin@doj.ca.gov> wrote:

Good afternoon Kevin and Gabriel,

Please see the attached correspondence regarding motions in limine.

Thank you,

**David C. Goodwin**

*Deputy Attorney General*

**California Department of Justice**

1300 I Street, Sacramento, CA 95814

Tel: (916) 210-7342

Fax: (916) 324-5205

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.